(No. 94907.—

PAULETTE CHANDLER, Adm'r of the Estate of Douglas Chandler, Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed October 2, 2003.*

332

334

RARICK, J., took no part.

Kurt E. Reitz and Heath H. Hooks, of Belleville (Thompson Coburn, L.L.P., of counsel), for appellant.

Bruce N. Cook, of Cook, Ysursa, Bartholomew, Brauer & Shevlin, Ltd., of Belleville, for appellee.

Vincent B. Browne and Kenneth J. Sophie, Jr., of Harrington, Thompson, Acker & Harrington, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE FREEMAN delivered the opinion of the court:

On January 16, 1997, a motor vehicle driven by Douglas Chandler collided with a railroad train owned and operated by defendant, Illinois Central Railroad Company (Illinois Central), at the Center Street crossing in Tilden, Illinois. Chandler sustained fatal injuries in the collision. Plaintiff, Paulette Chandler, administrator of decedent's estate, filed an action under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 1996)) in which she alleged that Illinois Central's negligence was the proximate cause of the death. Illinois Central filed a motion to dismiss pursuant to section 2—615 and section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 2000)) and a motion for summary judgment (735 ILCS 5/2—1005 (West 2000)). The circuit court of St. Clair County granted the motion to dismiss. The appellate court reversed and remanded for further proceedings. 333 Ill. App. 3d 463. We granted Illinois Central's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315). Following briefing and oral arguments in this case, the parties entered into a settlement agreement and subsequently moved this court to dismiss the appeal as moot. However, because the appeal presents ''(i) a question of public interest, (ii) an issue in need of authoritative determination for future guidance, and (iii) a situation likely to recur'' (see *Callis v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 364 (2001)), we address the issues raised by this

appeal and now affirm in part and reverse in part the judgment of the appellate court. Owing to the parties' settlement, however, there is no need for this court to remand the cause to the circuit court for further proceedings.

## BACKGROUND

In 1962, Illinois Central operated a railroad line running generally in a northwesterly-southeasterly direction between East St. Louis, Illinois, and Carbondale, Illinois. Train operations over the railroad line were by train order and timetable utilizing two main tracks for directional running. The railroad line crossed various streets and highways at grade in Randolph County and St. Clair County, including the crossing at issue in the Village of Tilden. In a petition filed with the Illinois Commerce Commission on March 10, 1962, Illinois Central proposed to install a centralized traffic control system on one of the main tracks and to retire the other main track. The centralized traffic control system would improve operating efficiency by allowing train movement in both directions on a single track. With the retirement of one main track, various grade crossings on the railroad line would change from double main line grade crossings to single main line grade crossings. At crossings where there would be no possibility of two or more trains occupying the crossing at the same time, the existing gate installations would be removed, leaving automatic flashing light signal installations. Illinois Central described the proposed grade crossing changes in detail, attaching blueprint drawings to its petition.

Following a hearing, the Commission made the following findings:

"(6) that due to present operation over two main tracks, the existing crossing protection in the above referred to Villages consists of automatic flashing light signals with short arm gates as is customary for such operation;

(7) that the elimination of one main track and by concentrating through train movements in both directions, on one track, it is impossible for a 'two train situation' to exist at any of the crossings at which gates are now installed; that the railroad proposes to relocate the existing signals as may be necessary to conform to the single track operating arrangement and to remove the short arm gates at such locations bringing said installations into conformity with standard practice for such conditions; that the re-established signal installation at the various crossings will conform to the requirements of General Order 138 of this Commission, and result in single main line grade crossings protected by automatic flashing light signals and bells;

\* \* \*

(12) that the next southerly crossing is Center Street (IC-41.9-G), Tilden, Randolph County. The northbound main track would be removed, the existing signals to remain as now placed and the short arm gates removed; movements over the house track would be made at slow speed under flagman protection when required."

The Commission ordered that Illinois Central "proceed in making the changes in the existing automatic flashing light signal and gate protection at the crossings of \*\*\* Center Street in the Village of Tilden, Randolph County, Illinois."

Illinois Central changed the Center Street crossing in conformity with the Commission's order. Thus, on the date of the collision, the crossing was equipped with luminous flashing signals only. Traveling in a southerly direction on Center Street, decedent's vehicle entered the crossing and was struck by a train proceeding in a westerly direction. Plaintiff filed this wrongful death action on behalf of decedent's next of kin.

Plaintiff filed the original complaint in Randolph County on October 6, 1997. On January 11, 1999, plaintiff voluntarily dismissed the complaint. Plaintiff filed a nearly identical complaint in St. Clair County on January 11, 2000. Plaintiff amended the complaint on

November 28, 2000. The circuit court dismissed the first amended complaint without prejudice on February 23, 2001. On March 2, 2001, plaintiff filed a pleading entitled "Third Amended Complaint," the pleading at issue in this appeal. Plaintiff has never filed a second amended complaint.

In paragraph five of the third amended complaint, plaintiff alleged that Illinois Central:

"a. Negligently and carelessly failed to adequately maintain its flashing warning signals;

b. Negligently and carelessly failed to adequately warn motorists of the approach of the train;

c. Negligently and carelessly placed the flashing signals controlling southbound traffic on Center Street more than 15 feet from the rail, contrary to the Illinois Administrative Code Title 92 § 1535.335;

d. Negligently and carelessly placed the flashing signals controlling such southbound traffic on Center Street in a manner that failed to adequately warn southbound motorists of an approaching train;

e. Negligently and carelessly failed to equip the crossing with gates when the defendant knew or should have known the railroad crossing was ultra hazardous;

f. Negligently and carelessly failed to keep its right-of-way reasonably clear of brush, shrubbery, trees, weeds and other unnecessary obstructions for a distance of at least 500 feet each way from its grade crossing in violation of 635 ILCS Section 5/18C—7401;

g. Negligently and carelessly failed to keep a proper lookout for vehicles at or near the crossing;

h. Negligently and carelessly drove its train at a speed that was not reasonable and proper;

i. Negligently and carelessly failed to stop or slow its train in a manner as to avoid the accident;

j. Negligently and carelessly removed gates from the crossing in question when the defendant knew or should have known that such presented a hazard to motors on Center Street;

k. Negligently and carelessly failed to have crossing gates protecting the intersection in question."

Plaintiff complained that, as a direct and proximate result of the negligent act or omissions of Illinois Central, decedent was not given adequate notice of the approach of the train, and decedent sustained fatal injuries in the ensuing collision.

The circuit court granted Illinois Central's motion to dismiss. In so ruling, the court noted, "Plaintiff has conceded that Paragraph 5(h) of her Third Amended Complaint should be dismissed based on federal preemption, and based on that stipulation, the Court orders that Paragraph 5(h) of the Third Amended Complaint is dismissed." The court then found that title 92, section 1535.335, of the Illinois Administrative Code (92 Ill. Adm. Code § 1535.335 (1996)) does not impose a duty to place signals within 15 feet of the near rail at a crossing. Accordingly, the court dismissed paragraph 5(c). Next, the court dismissed paragraph 5(i), finding that the allegations did not relate back to plaintiff's original complaint. Citing section 18c—7401(3) of the Illinois Commercial Transportation Law (Transportation Law) (625 ILCS 5/18c—7401(3) (West 1996)) and *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107 (1995), the court found a conclusive legal presumption that the warning devices at the crossing were adequate. Consequently, the court dismissed paragraphs 5(d), 5(e), 5(j) and 5(k). The court dismissed the remaining paragraphs for failure to allege a duty owed to decedent by Illinois Central.

The appellate court reversed and remanded. The court found no proper basis for dismissal of plaintiff's action, except with regard to paragraph 5(h), which plaintiff conceded should be dismissed based upon federal preemption.[1] 333 Ill. App. 3d at 474. We allowed Illinois Central's petition for leave to appeal. We also allowed the Illinois

---

[1]Plaintiff did not petition this court for leave to appeal from the appellate court's adverse ruling on paragraph 5(h).

Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff.

## ANALYSIS

### A. Adequacy of Warning Devices

Plaintiff alleged that Illinois Central's negligent conduct was the proximate cause of decedent's death. To state a cause of action for negligence, a plaintiff must establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 256 (1999); *Thompson v. County of Cook*, 154 Ill. 2d 374, 382 (1993). The existence of a duty is a question of law for the court to decide. *Thompson*, 154 Ill. 2d at 382; *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 421 (1992). Whether the defendant breached its duty to the plaintiff and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for a jury to decide. *Thompson*, 154 Ill. 2d at 382.

Section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)) provides for the involuntary dismissal of a cause of action based on certain defects or defenses. One of the enumerated grounds for a section 2—619 dismissal is that the claim is barred by affirmative matter which avoids the legal effect of or defeats the claim. 735 ILCS 5/2—619(a)(9) (West 2000). Affirmative matter "is something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994). Affirmative matter must be supported by affidavit, unless apparent on the face of the pleading attacked. 735 ILCS 5/2—619(a)(9) (West 2000).

A section 2—619 dismissal is akin to the grant of a

motion for summary judgment. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). "For that reason, the reviewing court conducts *de novo* review and considers whether 'the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Epstein*, 178 Ill. 2d at 383, quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993); see also *Wright v. City of Danville*, 174 Ill. 2d 391, 398-99 (1996).

In the case at bar, the circuit court dismissed paragraphs 5(d), 5(e), 5(j) and 5(k) of the third amended complaint because it found that section 18c—7401(3) of the Transportation Law (625 ILCS 5/18c—7401(3) (West 1996)) creates a conclusive legal presumption that the warning devices at the crossing were adequate. The circuit court dismissed paragraph 5(c) because it found that the Administrative Code did not impose a duty upon Illinois Central to place its signals within 15 feet of the near rail at a crossing. Because these paragraphs, at root, all question the adequacy of the warning devices at the crossing, we review the portions of the circuit court's order dismissing the paragraphs in tandem.

In *Espinoza*, 165 Ill. 2d 107, this court considered, and rejected, the plaintiffs' argument that the Elgin, Joliet and Eastern Railway Company (EJ&E) was negligent in failing to install crossing gates at a crossing equipped with flashing light signals, a warning bell, and railroad signs and markings. Initially, the court recognized that a railroad has a duty to provide adequate warning devices at its crossings. *Espinoza*, 165 Ill. 2d at 120. The court also recognized that the Transportation Law authorizes the Commission to require the installation of warning devices at railroad crossings. *Espinoza*, 165 Ill. 2d at 121. Since the record showed that the existent warning devices were operating properly at the time of the ac-

cident, the court noted that its review would be limited to whether EJ&E owed a duty to provide additional warning devices at the crossing, such as the gates at issue. *Espinoza*, 165 Ill. 2d at 120-21.

In considering the adequacy of the existent warning devices and the need for additional warning devices, the court reviewed section 18c—7401(3) of the Transportation Law, the section at issue in this case:

"The Commission shall have power, upon its own motion, or upon complaint, and after having made proper investigation, to require the installation of adequate and appropriate luminous reflective warning signs, luminous flashing signals, crossing gates illuminated at night or other protective devices in order to promote and safeguard the health and safety of the public. Luminous flashing signal or crossing gate devices installed at grade crossings, which have been approved by the Commission, shall be deemed adequate and appropriate." Ill. Rev. Stat. 1989, ch. 95½, par. 18c—7401(3), now 625 ILCS 5/18c—7401(3) (West 1996).

The court interpreted the language as providing that:

"once the Commission has investigated a crossing and has approved the installation of a luminous flashing signal or crossing gate device, then the installation of that device shall be deemed adequate and appropriate. A conclusive legal presumption is created which prevents plaintiffs from arguing that the railroad should have installed other warning devices." *Espinoza*, 165 Ill. 2d at 121.

Further, the court noted that the legal presumption of adequacy applies to any Commission investigation and approval, not just those that occurred after the effective date of the Transportation Law. *Espinoza*, 165 Ill. 2d at 122.

The record in the case established that the Commission had made the requisite investigation and approval pursuant to the Transportation Law. *Espinoza*, 165 Ill. 2d at 123. In 1965, the Commission had entered an order that flashing light signals be installed at the crossing, and, in 1981, Commission staff had inspected the cross-

ing and determined that crossing gates were not necessary. *Espinoza*, 165 Ill. 2d at 123-24. Accordingly, the court concluded:

"Having established that the Commission found the warning devices at the 22nd Street crossing to be adequate and appropriate, this determination is legally conclusive pursuant to the Transportation Law. As a result, the plaintiffs are barred from contesting the adequacy and appropriateness of the warning devices at the 22nd Street crossing. EJ&E therefore had no duty to provide additional warnings on the date of the accident. Thus, EJ&E is entitled to summary judgment with respect to the adequacy of the warning devices installed at the 22nd Street crossing." *Espinoza*, 165 Ill. 2d at 124.

In the case at bar, as in *Espinoza*, plaintiff questions the adequacy of the warning devices at the Center Street crossing. In particular, plaintiff maintains that Illinois Central was negligent in the placement of the flashing signals controlling southbound traffic on Center Street. Plaintiff also maintains that Illinois Central was negligent in removing the short arm gates from the crossing in 1962 and in failing to equip the crossing with gates as of the date of the collision. The record reveals, however, that in 1962 the Commission duly investigated the crossing and the adequacy of the warning devices. The Commission examined the documentary evidence submitted by Illinois Central, including the blueprints showing the location of the track and flashing signals. The Commission also considered the testimony adduced at the hearing on the matter. The Commission concluded that, in view of the proposed change from a double main line grade crossing to a single main line grade crossing, the flashing signals should remain as placed and the short arm gates removed. As in *Espinoza*, "[h]aving established that the Commission found the warning devices at the \*\*\* crossing to be adequate and appropriate, this determination is legally conclusive pursuant to the Transportation Law." *Espinoza*, 165 Ill. 2d at 124. As a

result, plaintiff is barred from contesting the adequacy and appropriateness of the warning devices. Illinois Central had no duty to provide additional warning devices on the date of the accident.

The appellate court found *Espinoza* to be factually distinguishable in that *Espinoza* concerned the installation of warning devices at a crossing while the case at bar involves the removal of warning devices from a crossing. 333 Ill. App. 3d at 469. Reflecting the reasoning of the appellate court, plaintiff maintains in this court that the conclusive legal presumption applies only where the Commission has approved the installation of warning devices at a crossing, not where the Commission has approved the removal of some warning devices, albeit the crossing is protected by other devices. Thus, according to plaintiff, the conclusive legal presumption applies where the Commission approves the installation of automatic flashing light signals at a crossing, such that the crossing is protected by the flashing lights and the customary railroad signs and markings. The conclusive legal presumption does not apply where the Commission approves the removal of short arm gates from a crossing, such that the crossing is protected by existent automatic flashing light signals and the customary railroad signs and markings. Such a distinction is untenable because in each instance the Commission ultimately approves the type of warning device in use at the crossing.

Plaintiff also follows the reasoning of the appellate court in arguing that the conclusive legal presumption only applies where the Commission, *upon its own motion or upon complaint*, approves the installation of the warning devices (see 333 Ill. App. 3d at 470). Plaintiff notes that Illinois Central initiated the proceedings at issue as opposed to the Commission or a private citizen. We reject plaintiff's argument. First, plaintiff assumes that the conclusive legal presumption cannot apply if a railroad

moves for a change to a railroad crossing. Nothing in section 18c—7401(3) so intimates. Moreover, there is no principled reason to distinguish between instances where the Commission approves the warning devices following investigation, whether the proceedings are initiated by the Commission, the railroad, a municipality or a private individual. Second, as noted in *Espinoza*, 165 Ill. 2d at 122, the conclusive legal presumption applies to "any Commission investigation and approval." It is not limited to instances where the Commission requires the installation of warning devices at a crossing, as opposed to instances where the Commission approves existent warning devices. Again, there is no principled reason for a distinction. The Commission undertakes the same investigation and is motivated by the same safety concerns whether it enters an order in a proceeding initiated by a railroad or by another entity, and whether it approves existent warning devices or warning devices which are to be placed at the crossing at a later date. In this regard we note that section 18c—7401(3) provides that "[n]o railroad may change or modify the warning device system at a railroad-highway grade crossing, including warning systems interconnected with highway traffic control signals, without having first received the approval of the Commission." 625 ILCS 5/18c—7401(3) (West 1996). Illinois Central modified the warning device system at the Center Street crossing upon approval of the Commission.

We conclude that the circuit court was correct in finding a conclusive legal presumption that the warning devices at the crossing were adequate. Paragraphs 5(c), 5(d), 5(e), 5(j), and 5(k) of the third amended complaint were properly dismissed.

### B. Relation Back

The circuit court found that paragraph 5(i) of the third amended complaint did not relate back to plaintiff's

original complaint. Because the third amended complaint was filed beyond the expiration of the statute of limitations, the circuit court dismissed paragraph 5(i)[2] pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)). Citing section 2—616(b) of the Code of Civil Procedure (735 ILCS 5/2—616(b) (West 2000)), plaintiff argues that paragraph 5(i) grew out of the same transaction or occurrence set out in the original complaint and should not have been dismissed.

Section 2—616 provides that:

"At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses." 735 ILCS 5/2—616(a) (West 2000).

The section further provides:

"The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading ***." 735 ILCS 5/2—616(b) (West 2000).

This court has recognized that a liberal construction of the requirements of section 2—616(b) is necessary "in order to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance." *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88, 102 (1995); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 106-07 (1996).

---

[2]Plaintiff included paragraph 5(i) in the first amended complaint. However, that pleading was also filed after the statute of limitations had expired.

Illinois Central concedes that plaintiff filed the original complaint within the statute of limitations. Thus, the first requirement of section 2—616(b) is satisfied. The question becomes whether paragraph 5(i) grew out of the same transaction or occurrence set up in the original complaint. We believe that it did. Plaintiff alleged in the original complaint that Illinois Central had a duty "to use reasonable care in the operation and movement of its train, and in the maintenance of its right-of-way and to use reasonable care in the evaluation of hazards and protection of the general public at points where its tracks and right-of-way crossed over public intersecting roadways." Plaintiff also alleged that Illinois Central breached its duty by failing to give adequate and timely warning of the approach of its train to the Center Street crossing and failing to keep a proper lookout for vehicles at or near the crossing. Plaintiff maintained that, as a result of Illinois Central's negligence, decedent was killed when his car was struck by a train at the Center Street crossing. Paragraph 5(i) of the third amended complaint is likewise based on Illinois Central's duty to use appropriate care to avoid collisions when operating its trains. In paragraph 5(i), plaintiff alleged that Illinois Central failed to stop or slow its train in a manner as to avoid the collision with decedent's car. Paragraph 5(i) is necessarily based upon the same transaction or occurrence set up in the original complaint. We conclude that the second requirement of section 2—616(b) has been met. The circuit court erred in its finding that paragraph 5(i) did not relate back to the original complaint.

## C. Allegation of Duty

The circuit court found that paragraphs 5(a), 5(b), 5(f), and 5(g) of the third amended complaint failed to allege a duty owed by Illinois Central to plaintiff's decedent. Consequently, the circuit court granted Illinois

Central's motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)).

A section 2—615 motion to dismiss attacks the legal sufficiency of the complaint. *Illinois Graphics*, 159 Ill. 2d at 484. Such a motion does not raise affirmative factual defenses, but alleges only defects appearing on the face of the complaint. *Illinois Graphics*, 159 Ill. 2d at 484; *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 8 (1992). "Because Illinois is a fact-pleading jurisdiction, a pleading must be both legally and factually sufficient. It must assert a legally recognized cause of action and it must plead facts which bring the particular case within that cause of action." 3 R. Michael, Illinois Practice § 23.4 (1989), citing *Teter v. Clemens*, 112 Ill. 2d 252 (1986); see also *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981). Thus, the question presented by a section 2—615 motion is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997); *Bryson*, 174 Ill. 2d at 86-87.

Although a complaint is deficient when it fails to allege the facts necessary for recovery, the plaintiff is not required to set out evidence; only the ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts. *Carriage Way West, Inc.*, 88 Ill. 2d at 308, quoting *Board of Education of the Kankakee School District No. 111 v. Kankakee Federation of Teachers Local No. 886*, 46 Ill. 2d 439, 446-47 (1970). Allegations of law or conclusions are not required and are, indeed, improper. *Illinois Graphics*, 159 Ill. 2d at 489. The Code of Civil Procedure specifically recognizes that no complaint is bad in substance which reasonably informs the defendant of the nature of the claim that he or she is called upon to meet. See 735 ILCS 5/2—612(b) (West 2000).

In ruling on a section 2—615 motion, a trial court is to consider only the allegations of the pleadings. *Illinois Graphics*, 159 Ill. 2d at 485; *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). Further, the trial court should dismiss the cause of action only if it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to recovery. *Bryson*, 174 Ill. 2d at 86-87; *Illinois Graphics*, 159 Ill. 2d at 488. A court of review determines *de novo* whether the trial court should have granted dismissal. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003).

In an action for negligence, as in the case at bar, the plaintiff is required to state facts from which a court will raise a duty to the plaintiff, as well as facts showing the defendant's breach of that duty and a resulting injury. *Miller v. S.S. Kresge Co.*, 306 Ill. 104, 106 (1922); *Illinois Steel Co. v. Ostrowski*, 194 Ill. 376, 385 (1902); see also *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 197 (1999); *Browning v. Heritage Insurance Co.*, 33 Ill. App. 3d 943 (1975). The existence of a duty depends upon whether the plaintiff and the defendant stood in such a relationship to each other that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002). As noted above, whether a duty exists is a question of law to be determined by the court. *Happel*, 199 Ill. 2d at 186, quoting *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990).

Illinois Central maintains that the circuit court's order of dismissal was proper because plaintiff failed to allege that Illinois Central owed a duty to plaintiff's decedent. We disagree. We believe the allegations of the third amended complaint are sufficient to raise a duty to plaintiff's decedent. In the third amended complaint, plaintiff alleged that Illinois Central owned and operated the train that collided with decedent's vehicle at the

Center Street crossing. Plaintiff further alleged that Illinois Central operated and maintained the Center Street crossing and the devices to warn of the approach of the trains. In paragraph 5(a), 5(b), 5(f), and 5(g) of the third amended complaint, plaintiff alleged that Illinois Central failed to adequately maintain its flashing warning signals at the crossing; failed to adequately warn motorists of the approach of the train; failed to keep a proper lookout for vehicles at or near the crossing; and failed to keep its right-of-way reasonably clear of brush, shrubbery and trees. Plaintiff then alleged that decedent's death was proximately caused by Illinois Central's negligence.

It is established that a railroad has a duty to provide adequate warning devices at its crossings. *Espinoza*, 165 Ill. 2d at 120; *Churchill v. Norfolk & Western Ry. Co.*, 73 Ill. 2d 127 (1978); see *Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.*, 212 Ill. App. 3d 732, 735 (1991); *Langston v. Chicago & Northwestern Ry. Co.*, 330 Ill. App. 260, 279 (1946). It is equally well established that a railroad has a duty to keep a proper lookout and warn of the approach of a train. *Espinoza*, 165 Ill. 2d at 119; see *Magna Bank of McLean County v. Ogilvie*, 235 Ill. App. 3d 318, 323 (1992); *Sheahan*, 212 Ill. App. 3d at 735. Lastly, section 18c—7401(3) of the Transportation Law requires that a railroad "remove from its right of way at all grade crossings within the State[ ] such brush, shrubbery, and trees as is reasonably practical for a distance of not less than 500 feet in either direction from each grade crossing." See 625 ILCS 5/18c—7401(3) (West 1996); see also 92 Ill. Adm. Code § 1535.205 (1996). This court has previously observed that "[i]t was negligence in the [railroad] company to permit or suffer weeds, or anything else, to grow upon its right of way to such a height as would materially obstruct the view of the highway. The safety of persons and property alike make it necessary the company should keep its right of way

free from obstructions, so that persons approaching the crossing may readily ascertain whether there is danger, and the employees in charge may be enabled to discover whether there is anything on the track." *Indianapolis & St. Louis R.R. Co. v. Smith*, 78 Ill. 112, 114 (1875); see also *Goodrich v. Sprague*, 376 Ill. 80, 89 (1941).

The third amended complaint reasonably informed Illinois Central of the nature of the claim which it was called upon to meet. The facts alleged raised a duty owed by Illinois Central to decedent. It was not necessary that plaintiff allege in formulaic words that Illinois Central had a duty to do or not do a particular thing. See 2 Nichols Illinois Civil Practice § 30:109 (rev. 2002). We conclude that the circuit court erred in granting dismissal.

## CONCLUSION

The circuit court properly dismissed paragraphs 5(c), 5(d), 5(e), 5(j) and 5(k) of the third amended complaint. Accordingly, we reverse that portion of the appellate court opinion reversing the dismissal of paragraphs 5(c), 5(d), 5(e), 5(j) and 5(k). The circuit court erred, however, in dismissing paragraphs 5(a), 5(b), 5(f), 5(g) and 5(i) of the third amended complaint. Accordingly, we affirm that portion of the appellate court opinion reversing the dismissal of paragraphs 5(a), 5(b), 5(f), 5(g) and 5(i).

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part.*

JUSTICE RARICK took no part in the consideration or decision of this case.