# Illinois Official Reports

## Appellate Court

> ## *Acevedo v. Cook County Sheriff's Merit Board*, 2019 IL App (1st) 181128

| | |
|---|---|
| Appellate Court Caption | JOSEPH ACEVEDO, ENRIQUE MEZA, and TAMARA WUERFFEL, as Individuals and on Behalf of All Others Similarly Situated, Plaintiffs, v. THE COOK COUNTY SHERIFF'S MERIT BOARD; JAMES P. NALLY, Chairman; BYRON BRAZIER, Vice Chairman; JOHN J. DALICANDRO, Secretary; GRAY MATEO-HARRIS, Board Member; VINCENT T. WINTERS, Board Member; JENNIFER BAE, Board Member; PATRICK BRADY, Board Member; KIM R. WIDUP, Board Member; THOMAS J. DART, Sheriff of Cook County in His Official and Individual Capacity; and THE COUNTY OF COOK, a Unit of Local Government and Indemnor, Defendants-Appellees (Joseph Acevedo, Plaintiff-Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-18-1128 |
| Filed | May 7, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-CH-7092; the Hon. Thomas R. Allen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jennifer W. Sprengel, Daniel O. Herrera, and Christopher P.T. Tourek, of Cafferty Clobes Meriwether & Sprengel LLP, of Chicago, and Dana L. Kurtz, Heidi Karr Sleper, and Jacob Exline, of Kurtz Law Offices, Ltd., of Hinsdale, for appellant. |

Stephanie A. Scharf, Sarah R. Marmor, and George D. Sax, of Scharf Banks Marmor, LLC, of Chicago, for appellee Thomas J. Dart.

Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Natalie N. Ellis, Nile N. Miller, and Jay Rahman, Assistant State's Attorneys, of counsel), for other appellees.

Panel

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Mason and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    In this putative class action, plaintiff Joseph Acevedo, on his own behalf and on behalf of those similarly situated, alleges that employment termination decisions issued by the Cook County Sheriff's Merit Board (Board) were void because the Board was illegally constituted at the time it issued those decisions. The trial court dismissed Acevedo's first amended complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)) on the basis that it lacked jurisdiction over Acevedo's putative class action. The trial court concluded that its jurisdiction to review an administrative decision was limited to those review actions brought under the Administrative Review Law (Review Law) (735 ILCS 5/3-102 (West 2016)); thus, it lacked jurisdiction to entertain Acevedo's collateral putative class action. Acevedo challenges this conclusion, and for the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND
¶ 3    On January 12, 2015, the Board issued a decision terminating Acevedo's employment as a Cook County correctional officer. Acevedo filed an action for direct review under the Review Law, and on February 24, 2016, the trial court affirmed the Board's decision.

¶ 4    Over a year later, on May 18, 2017, Acevedo instituted the present action. Five months later, on October 3, 2017, Acevedo, joined by Enrique Meza and Tamara Wuerffel, filed their first amended complaint. In that first amended complaint, Acevedo alleged that he was a former Cook County correctional officer, whose employment was terminated by Board decision on January 12, 2015. He further alleged that his Board decision terminating his employment was null and void because the Board was illegally constituted at the time, in that former Board member John R. Rosales had not been properly appointed under the Cook County Sheriff's Merit Board Act (Merit Board Act) (55 ILCS 5/3-7001 *et seq.* (West 2014)). Meza alleged that he was also a former Cook County correctional officer, whose termination by the Board was null and void because the Board was illegally constituted at the time, in that defendants Gray Mateo-Harris and Patrick Brady had been appointed for terms of less than six years. Wuerffel alleged that she was a former Cook County Sheriff's police sergeant, whose termination by the Board was null and void because the Board was illegally constituted at the time, in that Brady had been appointed for a term of less than six years. The three named plaintiffs—Acevedo,

Meza, and Wuerffel—also alleged, on behalf of those unnamed class members similarly situated, that any other terminations or suspensions by the Board in which Rosales, Mateo-Harris, and Brady participated were null and void, as were any terminations or suspensions by the Board in which defendants Byron Brazier, John J. Dalicandro, and Kim R. Widup participated, as their appointments were improperly retroactively approved. Plaintiffs sought a declaration that the Board's decisions were null and void and that they were entitled to "make-whole relief," including reinstatement and back pay. Plaintiffs also sought declarations that their terminations by an illegally constituted board violated their rights to due process and equal protection, damages, attorney fees, and costs.

¶ 5 Shortly after the filing of the first amended complaint, plaintiffs filed a motion for class certification, which the trial court entered and continued.

¶ 6 In December 2017, Meza and Wuerffel voluntarily dismissed their claims against the defendants.

¶ 7 On January 12, 2018, defendant Thomas J. Dart filed an amended motion to dismiss the first amended complaint pursuant to section 2-615 of the Code. Defendants the County of Cook and the Board joined in Dart's motion to dismiss. In that motion, defendants argued that the equitable remedies and monetary damages sought by Acevedo were not authorized by law; rather, at most, he was only entitled to a rehearing in front of a properly constituted Board. They also argued that the trial court's jurisdiction was limited under the Review Law to direct review of an administrative agency's specific decision and, therefore, the trial court lacked jurisdiction to consider a putative class action. Third, defendants argued that Acevedo failed to plead cognizable claims for equal protection and due process violations. Finally, defendants argued that Acevedo was improperly attempting to do an end-run around the trial court's prior administrative review of his termination.

¶ 8 In response, Acevedo, individually and on behalf of the putative class, argued that every action taken by the Board while it was illegally constituted, including receiving charges and issuing decisions on termination and suspension, was null and void, and therefore, plaintiffs were entitled to reinstatement and back pay. He also argued that the Review Law did not apply to his claims, either to defeat the trial court's jurisdiction or to otherwise limit his claims, because he was not attacking the Board's actions on their merits, but was, instead, arguing that the Board lacked jurisdiction to take any action whatsoever. Thus, the Review Law did not preclude him from bringing a class action or defeat the trial court's jurisdiction. Finally, he argued that his prior action for administrative review was not his only opportunity to challenge the Board's decisions on the basis that the Board was improperly constituted because void orders could be challenged at any time, either directly or collaterally.

¶ 9 In their reply, defendants argued that Acevedo had an opportunity to present his claim regarding the illegally constituted Board during the initial direct review of his termination decision and that he should not be given a second bite at the apple. More specifically, defendants argued that the trial court's affirmance of Acevedo's termination in the initial direct review action was *res judicata* to Acevedo's current claims; even if *res judicata* did not apply, Acevedo's current claims were barred under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/8-101(a) (West 2016)); the trial court lacked jurisdiction to consider any claims outside of Acevedo's initial direct review or to award the relief sought by Acevedo; and the appropriate remedy for Acevedo's claim would be a rehearing in front of a properly constituted Board.

¶ 10 The trial court permitted Acevedo to file a surreply on the issue of *res judicata*. In that surreply, Acevedo argued that *res judicata* did not apply because the Board's termination decision was void *ab initio*. Moreover, Acevedo argued, *res judicata* should not be applied on equitable grounds because the improper appointments of Board members were not known until recently. Acevedo also argued that the Tort Immunity Act did not bar his current claims because the void decision of the Board could be attacked at any time, his claims did not sound in tort, and the Tort Immunity Act did not bar claims for equitable relief. In addition, he argued that even if the Tort Immunity Act did apply, his claim was timely brought because he filed it within a year of discovering the full extent of defendants' alleged unlawful conduct.

¶ 11 A hearing was held on defendants' motion to dismiss. After hearing arguments from the parties, the trial court issued its ruling, granting defendants' motion. In doing so, the trial court acknowledged that its jurisdiction over administrative review cases is strictly limited to that permitted by the Review Law and that it lacked original jurisdiction over any action seeking any form of administrative review, such as Acevedo's class action claims for declaratory judgment. Concluding that Acevedo's claims were, at their core, claims for administrative review and that they were not brought pursuant to the Review Law, the trial court determined that it lacked jurisdiction.

¶ 12 Not seeking to remedy the defects found by the trial court but instead wanting only to include additional allegations of fact regarding improper appointments to the Board for purposes of appeal, Acevedo requested that he be granted leave to amend his complaint. The trial court granted his request. Thereafter, Acevedo filed a second amended complaint, which removed certain Board members as defendants, added different Board defendants, and modified its allegations regarding appointments. Defendants moved to strike or dismiss the second amended complaint. At the hearing on that motion, the trial court concluded that it would confuse the record to allow the matter to go up on appeal with two complaints naming different parties and containing different allegations. Therefore, it granted defendants' motion to strike the second amended complaint and modified its dismissal of the first amended complaint to be with prejudice.

¶ 13 Thereafter, Acevedo instituted this appeal.

¶ 14 II. ANALYSIS

¶ 15 On appeal, Acevedo argues that the trial court erred in dismissing his first amended complaint on the basis that it lacked jurisdiction because all actions taken by the illegally constituted Board were void and void actions may be attacked at any time, either directly or collaterally. He also argues that defendants' other arguments raised in support of their motion to dismiss—that his only remedy is a rehearing in front of a properly constituted Board, *res judicata* bars his claims, and the Tort Immunity Act bars his claims—are without merit. In addition to reiterating the arguments they made in the trial court, defendants respond on appeal by arguing that Acevedo's claims are barred by the *de facto* officer doctrine. We agree with defendants that the *de facto* officer doctrine bars Acevedo's claims. Because the putative class was never certified and because no other named plaintiffs remained after the dismissal of Acevedo's claims, dismissal of the entire complaint was appropriate.

¶ 16 A motion to dismiss under section 2-615 of the Code raises the question of whether the complaint's allegations, viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Chandler v. Illinois Central R.R. Co.*,

- 4 -

207 Ill. 2d 331, 348 (2003). The complaint should be dismissed only if it is clearly apparent that the plaintiff can prove no set of facts that would entitle him to relief. *Id.* at 349. Our review of the trial court's grant of a motion to dismiss under section 2-615 is *de novo*. *Id.*

¶ 17        Defendants argue on appeal that the trial court's dismissal of the amended complaint should be affirmed because Acevedo's claims are barred by the *de facto* officer doctrine. As an initial matter, Acevedo argues that defendants should not be allowed to raise this issue on appeal because they failed to file a cross-appeal. Defendants, as appellees, were not required to file a cross-appeal in order to raise the *de facto* officer doctrine as a basis for affirming the trial court, however. "[A]n appellee may raise any argument or basis supported by the record to show the correctness of the judgment below, even though he had not previously advanced such an argument." *In re Veronica C.*, 239 Ill. 2d 134, 151 (2010); see also *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 41 ("[A]n appellee who fails to raise an issue in the circuit court may raise it on appeal to affirm the circuit court's order, if the factual basis for the issue was before the circuit court."). Likewise, we are not bound by the reasoning of the trial court, and we may affirm on any basis found in the record, regardless of whether the trial court relied on that basis or its reasoning was correct. *Taylor, Bean, & Whitaker Mortgage Corp. v. Cocroft*, 2018 IL App (1st) 170969, ¶ 60.

¶ 18        In his amended complaint, Acevedo, relying on our decision in *Taylor v. Dart*, 2017 IL App (1st) 143684-B, alleged that the Board's decision to terminate his employment was void, because Rosales, who participated in the decision, was improperly appointed to the Board. In *Taylor*, the appellant sought direct administrative review of the Board's decision to terminate his employment as a Cook County Sheriff's police officer. *Id.* ¶¶ 9-10. In that action, the appellant challenged the validity of the Board's decision on the basis that Rosales was improperly appointed to a term of less than six years. *Id.* ¶ 10. The trial court agreed, vacated the Board's termination decision, and remanded to the Board for a rehearing before a properly constituted Board. *Id.* ¶ 11. The trial court also certified two questions for review by the appellate court:

> " 'Is a Cook County Sheriff's Merit Board member that was appointed on June 2, 2011 to serve a term which expired on March 19, 2012, a lawfully appointed member of the Merit Board when he presided over Percy Taylor's Merit Board Hearing on February 27, 2013? If the Merit Board member was not lawfully appointed to the Merit Board, does the decision of October 30, 2013 remain valid or is it rendered void?' " *Id.* ¶ 1.

The *Taylor* court concluded that because Rosales was appointed to a term of less than six years in violation of the Merit Board Act, he was not a lawfully appointed member of the Board at the time he participated in the hearing on the appellant's termination. *Id.* ¶ 37. The *Taylor* court also concluded that because the Board was not legally constituted at the time of the appellant's hearing (because Rosales was not a legally appointed Board member), its decision to terminate the appellant was void, and the appellant was entitled to a rehearing in front of a properly constituted Board. *Id.* ¶ 46.

¶ 19        Since *Taylor*, other individuals who have been subject to decisions by the Board have raised challenges to those decisions on the basis that Rosales or other Board members were improperly appointed to the Board for terms of less than six years. Of specific note are this court's decisions in *Lopez v. Dart*, 2018 IL App (1st) 170733, and *Cruz v. Dart*, 2019 IL App (1st) 170915. In *Lopez*, the appellant challenged the Board's termination decision on the basis that Rosales, who had been appointed to a term of less than six years, participated in the

decision. *Lopez*, 2018 IL App (1st) 170733, ¶ 37. Similarly, the appellant in *Cruz* challenged the Board's termination decision on the basis that three Board members—Widup, Brady, and Mateo-Harris—were unlawfully appointed to terms of less than six years. *Cruz*, 2019 IL App (1st) 170915, ¶ 28. In both cases, this court concluded that because the appellant was not the first litigant to raise the issue of invalid appointments of Board members for terms of less than six years, the *de facto* officer doctrine applied to validate the Board's termination decisions. *Id.* ¶ 38; *Lopez*, 2018 IL App (1st) 170733, ¶ 59.

¶ 20    In *Lopez*, we explained the *de facto* officer doctrine as follows:

"The *de facto* officer doctrine is a common law equitable doctrine that 'confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient.' *Ryder v. United States*, 515 U.S. 177, 180 (1995). In other words, under the doctrine, 'a person actually performing the duties of an office under color of title is considered to be an officer *de facto*, and his acts[,] as such officer[,] are valid so far as the public or third parties who have an interest in them are concerned.' *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 186-87 (2003) (citing *People ex rel. Chillicothe Township v. Board of Review*, 19 Ill. 2d 424, 426 (1960))." *Id.* ¶ 47.

The purpose of the doctrine is to permit the public to rely on an officer's authority and to ensure the orderly administration of justice. *Id.* ¶ 48. The United States Supreme Court put it this way:

" 'The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.' " *Ryder v. United States*, 515 U.S. 177, 180-81 (1995) (quoting 63A Am. Jur. 2d *Public Officers and Employees* § 578, at 1080-81 (1984)).

¶ 21    Under the doctrine, attacks on an officer's authority are divided into "collateral" and "direct" attacks. *Lopez*, 2018 IL App (1st) 170733, ¶ 49. A collateral attack challenges the government's action on the basis that it was taken by officers who were not properly in office. *Id.* A direct attack, on the other hand, challenges the officer's qualifications, not the actions that he took. *Id.* Traditionally, direct attacks are the only ones that have been allowed under the *de facto* officer doctrine but only via a *writ of quo warranto*. *Id.* Collateral attacks, however, are not allowed. *Id.*

¶ 22    After reviewing a number of cases in which the Illinois Supreme Court had applied or addressed the validity of the *de facto* officer doctrine, the *Lopez* court concluded that the application of the doctrine depended on the balancing of two competing public interests: the interest in the orderly functioning of the government and the interest in discovering and bringing to light improper agency appointments as a method of ensuring that agencies comply with their governing statutes. *Id.* ¶ 58. The best balance, the *Lopez* court concluded, was that discussed by Justice McMorrow in her special concurrence in *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160 (2002): in a collateral proceeding, only the first challenger of an improper appointment would be permitted to invalidate the agency's decision, and all others would be barred by the *de facto* officer doctrine. *Lopez*, 2018 IL App (1st) 170733, ¶ 58. As Justice McMorrow explained:

"By permitting the claimant who brought the illegal appointments to light to receive a new hearing, the incentive to discover and pursue such illegality is maintained. Once

- 6 -

the matter has been litigated and decided by the courts, however, the public interest in uncovering and addressing illegality is served. At that juncture, the public interest in preserving the validity of a large multitude of commission decisions takes precedence." *Daniels*, 201 Ill. 2d at 176 (McMorrow, J., specially concurring, joined by Freeman, J.).

¶ 23      Applying this rule to the facts before it, the *Lopez* court held as follows:

"Since the plaintiff in this case is not the first claimant to have brought the illegal appointment of Rosales to light, we conclude that public interest is better served by not invalidating the plaintiff's termination decision. This will circumvent the upheaval that would doubtlessly result if we were to invalidate the Merit Board's decision and invite hundreds of plaintiffs to seek invalidation of all the decisions rendered by the illegally constituted panel during Rosales's unauthorized term. The Merit Board's decisions are not solely limited to disciplinary actions and terminations but rather include promotions and job classifications, all of which could be jeopardized on the basis of Rosales's improper appointment. Accordingly, we apply the *de facto* officer doctrine in this case to find that the decision of the Merit Board as to the plaintiff was valid." *Lopez*, 2018 IL App (1st) 170733, ¶ 59.

¶ 24      Not long after the decision in *Lopez*, this court in *Cruz* again held that the *de facto* officer doctrine applied to uphold the validity of Board decisions when collaterally attacked on grounds that Board members were improperly appointed to terms of less than six years. *Cruz*, 2019 IL App (1st) 170915, ¶ 38. Although the appellant in *Cruz* challenged the appointment of Board members Widup, Mateo-Harris, and Brady, not Rosales, the appellant's challenge was to the same appointment irregularity raised in *Taylor* and *Lopez*—the interim appointment of Board members for terms of less than six years. *Id.* The court also noted that the legislature had been made aware of the irregularity and, in response, had remedied the problem by amending the statute to allow the sheriff to make interim appointments. *Id.* ¶ 39 (citing Pub. Act 100-562, § 5 (eff. Dec. 8, 2017)). Because of this, the *Cruz* court concluded that the balancing of the public interests at stake favored promoting the orderly functioning of the Board instead of invalidating its decisions where the irregularity had been remedied. *Id.* In addition, the court observed that any unfairness to litigants who came after Taylor and were thus barred from challenging their terminations was "more theoretical than practical" because, even if the court were to conclude that the Board decisions in the cases following *Taylor* were void, the only remedy available to the challengers would be a rehearing in front of a properly constituted Board. *Id.* ¶ 40. This was because conclusions that the Board's decisions were void did not necessitate a conclusion that the litigants were also entitled to reinstatement, as many of them sought. *Id.* Accordingly, the *Cruz* court held that the *de facto* officer doctrine applied to bar the appellant's claim that his termination by the Board was void due to the participation of Widup, Mateo-Harris, and Brady in the decision, after they had been improperly appointed for terms of less than six years.

¶ 25      In light of the decisions in *Lopez* and *Cruz*, we are compelled to conclude that Acevedo's claim that his termination was void because Rosales participated in the decision is barred by the *de facto* officer doctrine. We reach this conclusion for all the same reasons stated in the *Lopez* and *Cruz* cases. Acevedo raises the same issue with Rosales's appointment as was raised in *Taylor*, *Lopez*, and *Cruz*—an appointment to a term of less than six years; thus, he is not the first one to collaterally attack this appointment irregularity. Because of this, the public interest

- 7 -

in exposing such irregularities has been served, and the public interest in preserving the validity of the vast number of the Board's decisions must be upheld. See *Daniels*, 201 Ill. 2d at 176 (McMorrow, J., specially concurring, joined by Freeman, J.). Accordingly, Acevedo's claim that his termination decision is void because Rosales participated in the decision is barred by the *de facto* officer doctrine. See *Cruz*, 2019 IL App (1st) 170915; *Lopez*, 2018 IL App (1st) 170733.

¶ 26    Acevedo raises a number of arguments against the application of the *de facto* officer doctrine to his claim. First, he argues that his claims involve his constitutional rights to due process and equal protection and, thus, the doctrine should not apply. In support, Acevedo cites to language used by the United States Supreme Court in *Ryder* that past cases in which the doctrine had been applied "did not involve basic constitutional protections designed in part for the benefit of litigants" and that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." (Internal quotation marks omitted.) *Ryder*, 515 U.S. at 182-83.

¶ 27    What Acevedo fails to acknowledge, however, is that *Ryder* dealt with a challenge to the appointment of two civilian judges to a military court on the basis that their appointments violated the appointments clause of article II of the United States Constitution (*id.* at 182), and the Supreme Court's statements were made in specific reference to challenges to the "constitutional validity of the appointment." Here, although Acevedo claims that his constitutional rights were violated, his claim is that the violations occurred as a result of the *statutorily* improper appointment of Rosales. He does not claim that the appointment, itself, was constitutionally infirm. Thus, *Ryder*'s statement that timely challenges to the constitutional validity of appointments should be addressed on the merits does not apply here. Acevedo cites no authority for the proposition that a litigant who claims that his constitutional rights were violated by a termination decision by a statutorily infirm Board is immunized from application of the *de facto* officer doctrine.

¶ 28    Acevedo also argues that the *Lopez* decision "glossed over" Justice Thomas's dissent in the case of *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187 (2002). There, Justice Thomas took issue with allowing only the first challenger to an improper appointment procedure to have a new hearing; he did not, however, take issue with the application of the *de facto* officer doctrine in general. *Id.* at 209. Rather, his position was that in situations involving decisions issued by an improperly constituted agency, all of those decisions should either be upheld under the *de facto* officer doctrine or, in the alternative, all challengers to such decisions should be granted a new hearing. *Id.* It appears Justice Thomas's concerns lied in his opinion that allowing the first challenger relief but not affording the same relief to subsequent challengers was not in the public interest. *Id.* at 207-08. Specifically, it did not solve the underlying appointment irregularity, and it would invite litigation from a large number of litigants, only to deny them relief. *Id.*

¶ 29    Although it might not have specifically addressed each point raised by Justice Thomas in his *Baggett* dissent, it is nevertheless clear to us from its well-reasoned analysis that the *Lopez* court took into consideration the various interests at issue in cases involving improperly constituted agencies and struck the best balance possible. The fact that Justice Thomas and Acevedo might disagree with that approach does not require us to perform a wholesale reconsideration of the *Lopez* and *Cruz* holdings. Accordingly, we are not persuaded that the

*Lopez* court's failure to specifically address the issues raised in Justice Thomas's *Baggett* dissent requires us to deviate from the holdings in *Lopez* and *Cruz*.

¶ 30 Acevedo next argues that the *de facto* officer doctrine should not be applied in this case because the appointment irregularities at issue were not "merely technical" but instead violated substantial policy considerations. In particular, according to Acevedo, the appointment irregularities identified in his first amended complaint violated the Merit Board Act's goals of having an experienced, independent, balanced, and nonpolitical Board. As an initial matter, we observe that Acevedo did not allege any facts in the first amended complaint that support his claim on appeal that the improperly appointed Board members were inexperienced or biased or that their appointments resulted in a Board that was improperly skewed in favor of one political party.

¶ 31 Moreover, in support of his position, Acevedo cites *Nguyen v. United States*, 539 U.S. 69 (2003). *Nguyen*, however, is not helpful to Acevedo. At issue in that case was the validity of a decision of a United States Court of Appeals panel comprised of two article III judges and one article IV territorial judge. *Id.* at 72-73. The United States Supreme Court concluded that because only article III judges could serve on the United States Court of Appeals and, because the territorial judge did not have article III powers, that territorial judge was not qualified to serve on the United States Court of Appeals. *Id.* at 80. The government argued that the panel's decision should nevertheless be upheld under the *de facto* officer doctrine. *Id.* at 77. In addressing that contention, the Court noted that it typically applied the doctrine in situations where the defect in statutory authority was "merely technical," such as when an otherwise qualified district court judge was improperly appointed for temporary service in another district. *Id.* at 77-78. However, the Court observed that, in cases on direct review, it had declined to apply the doctrine where the violations were of a statute that "embodies a strong policy concerning the proper administration of judicial business." (Internal quotation marks omitted.) *Id.* at 78. The Court identified these as cases where the person appointed was incompetent to hold the appointment because the statute prohibited him or her from doing so. See *id.* at 78-79. In other words, the difference between the irregular appointments to which the doctrine applied and the impermissible appointments to which the doctrine did not apply was "the difference between an action which could have been taken, if properly pursued, and one which could never have been taken at all." *Id.* at 79. Because the territorial judge at issue in *Nguyen* was not permitted to serve on the United States Court of Appeals under any circumstances since he was not an article III judge, his was an appointment that could never be made. *Id.* at 80. Therefore, the Court declined to apply the *de facto* officer doctrine. *Id.*

¶ 32 In the present case, all of the appointment defects alleged in the first amended complaint relate only to the technical requirements of appointments—length of terms and timing of appointment approval. At no point has Acevedo made any argument that any of the improperly appointed Board members were incompetent to serve on the Board, *i.e.*, that they lacked the proper qualifications or were otherwise prohibited from serving. In other words, Acevedo does not allege that the members at issue could never serve but instead only alleges that their appointments were not properly pursued. Accordingly, it appears to us that the appointments in this case fall within the technical defect category as defined by the *Nguyen* court.

¶ 33 Acevedo also argues that by applying the *de facto* officer doctrine, nothing is done to redress the wrongs done to the litigant. In addition, he argues that the amendment to the Merit Board Act that allowed the sheriff to make interim appointments to the Board does not apply

retroactively to validate the Board decisions issued prior to the amendment. There can be no dispute that application of the *de facto* officer doctrine results in some litigants not being permitted to invalidate the challenged agency's decision. This consequence, however, has always been inherent in the use of the doctrine, and yet the doctrine has been repeatedly utilized by Illinois courts after balancing the competing interests involved. See *Lopez*, 2018 IL App (1st) 170733, ¶¶ 52-57 (summarizing the consistent use of the *de facto* officer doctrine in Illinois jurisprudence). We see no reason, at this juncture, to conclude that the balance of those competing interests has changed so dramatically that the doctrine must be completely discarded.

¶ 34    Relying on the case of *Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984), Acevedo argues that the doctrine should not be applied because Dart had notice and knew of the defects in the Board appointments, yet continued to appoint members and allow the Board to hear cases. Again, Acevedo's reliance is misplaced. The *Andrade* court, recognizing some of the drawbacks in the application of the *de facto* officer doctrine, concluded that, under certain circumstances, the purposes of the doctrine could be served while still allowing litigants to pursue relief. Namely, where the plaintiff brings his action "at or around the time that the challenged government action is taken" and is able to demonstrate "that the agency or department involved has had reasonable notice under all the circumstances of the claimed defect in the official's title to office," he should be allowed to pursue his action without application of the *de facto* officer doctrine. *Id.* at 1499. Notably, in making his argument that *Andrade* supports relaxing application of the doctrine in this case, Acevedo fails to mention *Andrade*'s requirement that the action be brought at or around the time of the challenged action, *i.e.*, the issuance of Acevedo's termination decision. Here, Acevedo did not bring this challenge to his termination at or around the time the Board issued its termination decision in January 2015. On direct review, Acevedo did not raise the issue of Rosales's improper appointment; he only raised it for the first time when he instituted the present action in May 2017, over two years after the termination decision was issued. Accordingly, even if we were to overlook the fact that the D.C. Circuit's application of the doctrine is not binding in Illinois (*Huck v. Northern Indiana Public Service Co.*, 117 Ill. App. 3d 837, 840 (1983)), and even if we were to agree that Dart had the required notice, Acevedo has failed to meet the first requirement for relaxing the application of the doctrine under *Andrade*.

¶ 35    Acevedo next argues that the *Cruz* decision "lumped every challenge to the jurisdiction of the illegal Merit Board to issue disciplinary decisions as 'irregularities in appointment procedures.' [Citation.] The *Cruz* decision essentially nullifies the Merit Board Act and grants Sheriff Dart immunity to violate the appointment requirements as he pleases." In addition, Acevedo argues that *Lopez* "bars any challenge to any Merit Board appointment into perpetuity." We disagree, and we find Acevedo's contention in this respect to be disingenuously overbroad. The *Lopez* court was careful to limit itself and its holding to cases involving Rosales's improper appointment. See *Lopez*, 2018 IL App (1st) 170733, ¶ 59 (referring repeatedly and specifically to challenges to the illegal appointment of Rosales). As for *Cruz*, that decision did not lump all challenges to the jurisdiction of the Board into a single category of appointment irregularities. Rather, the *Cruz* court noted that although the appellant in that case challenged the appointment of Board members other than Rosales, he did so based on "the same problem with the appointment procedure that was before us in both *Taylor* and *Lopez*" and was challenging the "same 'irregularity' in appointment procedures of the Board

that has already come to our attention and been addressed." *Cruz*, 2019 IL App (1st) 170915, ¶ 38. We think it apparent that the *Cruz* court was referring to appointments of less than six years—the particular irregularity at issue—and not all appointment irregularities in general. We see nothing in the language of either *Lopez* or *Cruz* to suggest that future challengers to appointment irregularities other than appointments for less than six years will be barred by the *de facto* officer doctrine.

¶ 36    Finally, Acevedo points out that he alleges appointment irregularities other than Rosales's improper appointment for a term of less than six years, namely, the appointment of Brady and Mateo-Harris for terms of less than six years and the retroactive approval of the appointments of Brazier, Dalicandro, and Widup. First, with respect to the challenges to Brady and Mateo-Harris, they raise the same appointment irregularity—interim appointments of less than six years—as was raised in *Taylor*, *Lopez*, and *Cruz*. Accordingly, those challenges are barred by the *de facto* officer doctrine. *Cruz*, 2019 IL App (1st) 170915, ¶ 28.

¶ 37    More importantly, however, is the fact that the only basis alleged in the first amended complaint for the claim that Acevedo's termination was issued by an improperly constituted Board is that Rosales was appointed to a term of less than six years. He makes no claim in the first amended complaint that any of the other allegedly improperly appointed members participated in his termination.[1] We note that in his opening brief, Acevedo claims that Widup "oversaw [his] hearing, administered oaths, and ruled on the admissibility of evidence." The first amended complaint does not, however, contain any such allegations or support such an inference. Rather, Acevedo alleged that the Board decision terminating his employment was null and void "because the Board was improperly constituted with former Member John R. Rosales having been invalidly appointed under the [Merit Board] Act." Later, he alleged:

> "17. Plaintiff Acevedo is a former Cook County Correctional Officer who was terminated by the Defendant Board in a decision dated January 12, 2015. Member Rosales was a part of the deliberations on Acevedo's termination decision, and signed off on the final order terminating his employment."

He made no allegations anywhere in the first amended complaint that Widup participated in the decision to terminate his employment. Instead, the only allegations related to Widup were that he "deliberated upon, and signed off on the cases of officers similarly-situated to Plaintiffs." Accordingly, we decline to consider any allegation raised for the first time on appeal that Acevedo's termination was null because Widup participated in the decision. See *Wells Fargo Bank, N.A. v. Maka*, 2017 IL App (1st) 153010, ¶ 24 (stating that issues not raised in the trial court cannot be raised for the first time on appeal).

¶ 38    We recognize that that the first amended complaint included allegations regarding the improper appointments of Brazier, Dalicandro, and Widup as they relate to the putative,

---

[1]We note that Dart's brief on appeal states that after the dismissal of Wuerffel and Meza, "the remaining factual allegations of the First Amended Complaint boiled down to Acevedo's claim that Rosales and Widup, as well as most of the other participants in the Merit Board decision against him, were improperly appointed." To the extent that Dart suggests that the first amended complaint contains allegations that Widup or any other of the allegedly improperly appointed Board members participated in Acevedo's termination, he is incorrect. As we discuss, of the named Board members were allegedly improperly appointed, only Rosales was identified in the first amended complaint as having participated in Acevedo's termination decision.

unnamed class members. We need not consider these, however, because unless Acevedo, as the last remaining named plaintiff and putative class representative, is able to state a valid cause of action, the class action cannot be certified and maintained. See *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 560 (2009) (where the named plaintiff was unable to maintain a cause of action against the defendant, she was not an appropriate representative of the putative class and class certification was not appropriate); *Landesman v. General Motors Corp.*, 72 Ill. 2d 44, 48-49 (1978) (holding that "[t]he requirement that the named representatives of the putative class possess a valid cause of action is subsumed" in the class certification requirements that common questions of law and fact predominate and that the representative parties will fairly and adequately protect the interests of the class, and that if the trial court finds that the complaint fails to state a cause of action, it should be dismissed); *Spring Mill Townhomes Ass'n v. OSLA Financial Services, Inc.*, 124 Ill. App. 3d 774, 779-80 (1983) (where none of the named plaintiffs had a cause of action against the defendants, no class action could be maintained and the trial court did not err in directing a verdict in favor of defendants on the complaint).

¶ 39 We conclude, for all the reasons stated above, that Acevedo's claim that the Board's decision terminating his employment was null and void due to Rosales's improper appointment is barred by the *de facto* officer doctrine, and thus, he was unable to state a cause of action against defendants. In turn, because Acevedo does not have a valid cause of action against the defendants, and because the other named plaintiffs—Meza and Wuerffel—voluntarily dismissed their claims, the trial court properly dismissed the first amended complaint in its entirety.

¶ 40 III. CONCLUSION

¶ 41 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 42 Affirmed.