NOTICE

Decision filed 08/01/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 140407

NO. 5-14-0407

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| KELLY A. HENBY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Richland County. |
| | ) | |
| v. | ) | No. 13-OP-04 |
| | ) | |
| RICHARD WHITE, | ) | Honorable |
| | ) | Christopher L. Weber, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Goldenhersh and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioner, Kelly A. Henby, appeals the circuit court's decision to dismiss with prejudice his third amended verified petition for a stalking no contact order against the respondent, Richard White. For reasons that follow, we affirm.

¶ 2    The respondent, Richard White, is an Illinois State Police officer. The petitioner, Kelly Henby, retired from the Illinois State Police in 2008. At one point in time, Henby was White's supervisor.

¶ 3    On January 29, 2013, Henby filed a *pro se* verified petition for a stalking no contact order in the circuit court of Richland County against White, under the Stalking

1

No Contact Order Act (Act) (740 ILCS 21/1 *et seq.* (West 2012)).  In support of the petition, Henby alleged that in the fall of 2011, his father-in-law, Don Riggs, had encountered White at a nursing home in Fairfield; that the encounter occurred while Don Riggs was visiting his own mother, Goldie Manlove, who had recently been admitted to the nursing home due to her infirmities; and that Don Riggs was upset by the encounter because he was aware that White had caused trouble for Henby.  Henby further alleged that after Goldie Manlove died, White appeared at the Nales Funeral Home for Goldie Manlove's visitation, when he knew that Henby would be present.  Henby claimed that when White was told he was not welcome, he did not initially respond but then smiled at Henby and left.  Henby sought an order directing White to refrain from contacting Henby and his family and an order prohibiting White from possessing a Firearm Owner's Identification Card.

¶ 4    According to a docket entry dated January 29, 2013, the circuit court heard sworn testimony from the petitioner that day, without notice to White, and found good cause to enter an emergency order of protection.  The court identified two acts that could constitute stalking under the Act.  The first act occurred when White, while visiting the nursing home where Goldie Manlove resided, spoke to and upset Don Riggs.  The second occurred on January 28, 2013, when White went to the visitation for Goldie Manlove and initially refused to leave when told he was not welcome.  The court directed that the emergency order would remain in effect until the plenary hearing on February 13, 2013.

¶ 5    On January 31, 2013, White filed a petition for rehearing under section 120(c) of the Act (740 ILCS 21/120(c) (West 2012)).  In his petition, White asserted that he did not

receive notice of the emergency hearing and that he was thereby prejudiced because he had meritorious defenses. White alleged that the petition contained false statements and that it failed to state a claim for relief.

¶ 6    An evidentiary hearing on White's motion was held on February 5 and 7, 2013. The court heard testimony from White, Henby, Donna Henby, Don Riggs, Master Sergeant Jay Hall, and the minister at Goldie Manlove's church. The testimony revealed that the conflict between White and Henby began in 2010. We present an overview of the evidence for the purpose of providing a contextual framework for the allegations at issue, remaining mindful that the case was dismissed for failure to state a cause of action.

¶ 7    In 2010, White was assigned to investigate a criminal case involving allegations that a man named Jim Hinkle had improperly touched a minor child, who was related to Hinkle. Hinkle was a retired Illinois State Police officer and former sheriff of Wayne County. In light of the serious allegations, Hinkle asked Henby to independently investigate the allegations on behalf of Hinkle. Henby had been working as an independent contractor for a private investigative agency since his 2008 retirement from the Illinois State Police, but he was not a licensed private detective. Henby agreed to help Hinkle without charge. In September 2010, Henby arranged to interview the minor at her home in Coles County. Before beginning the interview, Henby represented to the minor that he was a private detective. During the recorded interview with the minor, she disavowed the allegations against Hinkle. Apparently, prior to the interview and unbeknownst to Henby or White, the minor had informed a juvenile officer that she wanted to withdraw her complaint against Hinkle.

3

¶ 8    When White learned of Henby's involvement in the investigation, he contacted the Illinois Department of Financial and Professional Regulation (Department) to determine whether Henby was licensed as a private detective. Upon learning that Henby did not have a license, White filed an administrative complaint with the Department, which then opened an investigation into Henby's conduct. White also contacted the State's Attorney in Coles County and asked that Henby's conduct be reviewed. Henby was thereafter charged with a misdemeanor for acting as an unlicensed investigator, and a warrant was issued for his arrest. On February 15, 2011, Henby turned himself in and posted bond. The criminal case was delayed pending the outcome of the administrative proceeding. An administrative hearing before an administrative law judge commenced on December 3, 2012, and ended on December 5, 2012. After considering the evidence, the administrative law judge found that Henby had acted as a private detective without being licensed and recommended that Henby be fined $1000 for the violation. The Secretary of the Department accepted the findings and recommendation of the administrative law judge. The misdemeanor charge was nol-prossed on December 5, 2012, in light of the administrative hearing.

¶ 9    Meanwhile, the criminal investigation against Jim Hinkle was terminated, and no charges were filed. Thereafter, in early 2012, Hinkle filed a civil action against White and another law enforcement officer in the federal court for the Southern District of Illinois. Henby was identified as a witness in that case. The testimony also revealed that Henby intended to file an action against White in federal court.

4

¶ 10    During the hearing, the court heard testimony about an encounter between Henby's father-in-law, Don Riggs, and White. In September 2012, Don Riggs crossed paths with White at a nursing home in Fairfield, Illinois. This encounter occurred while Riggs was visiting his mother, Goldie Manlove, who had recently been admitted to the nursing home due to infirmities. Upon learning that White had spoken to Riggs at the nursing home, Henby became upset and phoned White's supervisor, Master Sergeant Jay Hall. Henby asked Hall to direct White to have no further contact with Henby or Henby's family. Hall talked with White but did not direct him to stay away from Henby. At the time of the hearing, neither White nor Riggs, then 84 years old, could recall the encounter.

¶ 11    The court also heard testimony about an incident that occurred during the visitation for Goldie Manlove. Goldie Manlove passed away in January 2013. The visitation and funeral were held on January 28, 2013. Goldie Manlove had attended the same church as White and his family, and she had participated in Sunday school classes taught by White. White wanted to pay his respects but was concerned about encountering Henby at the funeral home. When White discussed the situation with his wife, she advised that she had seen Don Riggs at the local McDonald's restaurant and that she overheard Riggs mention that Henby and his wife would not be attending the visitation because they would be returning from an important weekend gymnastics competition. In light of this conversation, White went to the Nales Funeral Home on the morning of January 28, 2013. As he went up the steps of the funeral home, he was stopped by Henby's wife, Donna. Donna told White that he was not welcome and asked

him to leave. White did not immediately move. Henby then came out and told White to leave. When White did not turn and leave immediately, Henby yelled at him and used an expletive. White then turned to leave. He glanced back in Henby's direction before departing.

¶ 12    After the testimony concluded, White moved for a directed verdict. White argued that Henby had failed to establish the requisite two acts of stalking to satisfy the course of conduct element of the Act. After considering the evidence and the arguments of counsel, the trial court concluded that Henby failed to present a *prima facie* case that White had engaged in a course of conduct under the Act. The court found that Henby had presented a *prima facie* case of one act, that being the act at the funeral home. The court further found that Henby had not presented sufficient evidence from which to find a second act of stalking. The court entered a directed verdict in favor of White and vacated the emergency stalking no contact order. The court then granted Henby leave to file an amended petition.

¶ 13    On March 7, 2013, Henby filed an amended verified petition for a stalking no contact order. The amended petition reasserted the prior allegations regarding White's appearance at the funeral home and presented new allegations regarding White. These new allegations claimed that White had either issued, or caused to be issued, press releases setting forth information about Henby's prior arrest. Ostensibly, these press releases were provided to news outlets in Henby's home town and around southern Illinois. Henby alleged that a witness named Roy Finley had been deposed in the federal case filed by Jim Hinkle; that Finley testified about a conversation he had with White in

6

January 2012, which was about a month prior to Henby's arrest; that during this conversation, White told Finley to be listening to the news for stories regarding an investigation involving two people that Finley knew; and that Finley later read an elaborate story about Henby's involvement with Hinkle in the Disclosure newspaper. Henby further alleged that White issued the press releases in an effort to embarrass and harass Henby and to cause Henby severe emotional distress.

¶ 14    White filed a motion to dismiss the amended petition on the ground that the petition failed to state a claim on which relief may be granted.  White claimed that many of the allegations in the amended petition had previously been reviewed and rejected by the court.  White further claimed that the misdemeanor charge against Henby was a matter of public record and that White's alleged dissemination of information about Henby's arrest to the media did not constitute stalking under the Act.  After considering the oral and written arguments of counsel, the court dismissed Henby's amended petition without prejudice.  In its order, the court noted that it had previously considered most of the allegations in the amended petition and that it had previously found that the funeral home incident was the only act that could constitute stalking.  The court recognized that there were two sets of factual allegations that it had not previously considered.  The first involved allegations that White had issued press releases regarding Henby's arrest.  The second involved the deposition testimony of Finley.  The court reviewed the allegations regarding press releases and determined that the allegations, as pled, did not constitute stalking and would not cause a reasonable person to fear for his safety.  The court reviewed the allegations regarding Finley's testimony and found that nothing within the

7

alleged conversation between White and Finley would constitute stalking. The court further found that the amended petition did not allege sufficient facts to show that White had anything to do with the news story that Finley referenced.

¶ 15    On July 23, 2013, Henby filed a second amended verified petition for a stalking no contact order. The second amended petition contained the same basic allegations but included an attached statement that was purportedly authored by Roy Finley. On August 22, 2013, White filed a motion to dismiss and a request for sanctions. Following a hearing on October 15, 2013, the trial court dismissed the second amended petition with prejudice. The court found that the allegations regarding the press releases, as pled, would not constitute stalking as defined in the Act and that the allegations in the second amended petition failed to allege sufficient facts to show two separate acts to establish a course of conduct under the Act. The court denied White's motion for sanctions.

¶ 16    Henby filed a motion to reconsider and claimed that new information regarding the press releases had been obtained as a result of the deposition of Greg Hanisch, taken during the discovery phase of Hinkle's federal lawsuit. The court granted the motion and allowed Henby to amend his petition.

¶ 17    On April 22, 2014, Henby filed a third amended verified petition. The petition included a few new factual allegations regarding White's alleged dissemination of information to the press about Henby's arrest. The new allegations asserted that White had contacted Greg Hanisch, a sheriff's deputy who had been working with the Illinois State Police on a drug task force; that White suggested that Hanisch provide information about Henby's arrest to the publisher of the Disclosure newspaper; that, upon information

8

and belief, the deputy provided that information to the publisher; and that the information was printed in the March/April 2011 edition of the Disclosure newspaper. Neither the news article nor the transcript of Hanisch's deposition was attached to the third amended petition.

¶ 18   White moved to dismiss the third amended verified petition for failure to state a cause of action. White argued that the third amended petition alleged, at best, one act that could constitute stalking and that there were no allegations that he communicated threats of violence or intimidation. After considering the arguments of counsel, the court found that White's conduct in providing information to the media about Henby appeared to be motivated by "personal hostility" but that the conduct, as pled, did not constitute "threats of violence or intimidation" under the Act. The court also found that the conduct alleged was protected free speech. The court concluded that the third amended petition set forth only one act that could constitute stalking and that it failed to state a cause of action. The court dismissed the third amended petition with prejudice. This appeal followed.

¶ 19   On appeal, Henby contends that the third amended petition alleges at least two acts of stalking as required to establish a "course of conduct" as defined in section 10 of the Act (740 ILCS 21/10 (West 2012)) and that the trial court erred in dismissing the third amended petition for failure to state a cause of action.

¶ 20   Illinois is a fact-pleading jurisdiction. Therefore, a party must allege sufficient facts to bring his or her claim within the scope of a legally recognized cause of action. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348, 798 N.E.2d 724, 733 (2003).

A motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)) attacks the legal sufficiency of the petition. *Chandler*, 207 Ill. 2d at 348, 798 N.E.2d at 733. The question presented by a section 2-615 motion is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Chandler*, 207 Ill. 2d at 348, 798 N.E.2d at 733. When deciding a motion to dismiss, the trial court is to consider only the allegations in the pleadings. *Chandler*, 207 Ill. 2d at 349, 798 N.E.2d at 733. The trial court's decision to grant a motion to dismiss under section 2-615 is reviewed *de novo*. *Chandler*, 207 Ill. 2d at 349, 798 N.E.2d at 733.

¶ 21 The Stalking No Contact Order Act enables victims of stalking to seek a civil remedy requiring that the offenders stay away from them. 740 ILCS 21/5 (West 2012). The purpose of the Act is set forth in the opening section. 740 ILCS 21/5 (West 2012). Therein, it is recognized that stalking is a serious crime and that victims of stalking fear for their personal safety and suffer emotional distress, leading many to alter their routines and some to relocate to other places to avoid the person who is stalking them. 740 ILCS 21/5 (West 2012). This section further states that stalking generally refers to a course of conduct, not a single act, and that stalking behavior includes following a person; conducting surveillance of the person; appearing at the person's home, work, or school; engaging in unwanted communications including making phone calls and sending emails and text messages; leaving objects for the person; vandalizing the person's property; or injuring a pet. 740 ILCS 21/5 (West 2012).

¶ 22    Section 10 of the Act provides definitions for some of the words and phrases used in the Act. 740 ILCS 21/10 (West 2012). Stalking is defined as "engaging in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety or the safety of a third person or suffer emotional distress." 740 ILCS 21/10 (West 2012). Stalking does not include an exercise of the right to free speech or assembly that is otherwise lawful. 740 ILCS 21/10 (West 2012). A course of conduct is defined as "2 or more acts, including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person, engages in other contact, or interferes with or damages a person's property or pet." 740 ILCS 21/10 (West 2012). A course of conduct may include contact via electronic communications. 740 ILCS 21/10 (West 2012). Contact means "any contact with the victim, that is initiated or continued without the victim's consent, or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued, including but not limited to being in the physical presence of the victim; appearing within the sight of the victim; approaching or confronting the victim in a public place or on private property; appearing at the workplace or residence of the victim; entering onto or remaining on property owned, leased, or occupied by the victim; or placing an object on, or delivering an object to, property owned, leased, or occupied by the victim." 740 ILCS 21/10 (West 2012). Emotional distress is defined as "significant mental suffering, anxiety or alarm." 740 ILCS 21/10 (West 2012).

11

¶ 23　An action for a stalking no contact order is commenced by the filing of a verified petition alleging that the victim has been the victim of stalking by the respondent. 740 ILCS 21/20, 25 (West 2012). Proceedings under the Act are governed by the Illinois rules of civil procedure, and the standard of proof is a preponderance of the evidence. 740 ILCS 21/30(a) (West 2012).

¶ 24　Initially, Henby argues that his third amended petition alleges two separate acts in relation to the incident at Nales Funeral Home. Henby asserts (1) that the allegations regarding White's appearance at the funeral home for the visitation of Goldie Manlove was one act of stalking and (2) that the allegations that White's wife passed on information to her husband about a conversation she overheard at the McDonald's restaurant between Don Riggs and others regarding whether Henby would attend the funeral constituted a separate act of monitoring Henby's activities and stalking. After reviewing the third amended petition, we find that the factual allegations regarding White's appearance at the funeral home are sufficient to set forth one act of stalking. We do not find, however, that the allegations regarding White's conversation with his wife about what she overheard while at the local McDonald's restaurant are sufficient to set forth a separate act of stalking. There are no factual allegations indicating that White directed his wife to gather information on Henby or that White's wife intentionally monitored Don Riggs's conversation at the local McDonald's restaurant in an attempt to acquire information for her husband about Henby's whereabouts. The allegations regarding the overheard conversation, when taken in a light most favorable to the petitioner, are not sufficient to establish a separate act of stalking under the Act.

12

¶ 25     We next consider Henby's contention that a separate act of stalking occurred when White disseminated, or caused a third party to disseminate, Henby's postarrest photo as well as the news of Henby's arrest to media outlets throughout southern Illinois. Henby points to the allegations regarding White's conversation with Roy Finley and White's subsequent suggestion to a sheriff's deputy that he provide information about Henby's arrest to the publisher of the Disclosure newspaper. Henby argues that the dissemination of the news of his arrest and the publication of his postarrest photo were acts that were intended to intimidate him and cause him emotional distress.

¶ 26     Section 10 of the Act states that stalking does not include an exercise of the right to free speech that is otherwise lawful. 740 ILCS 21/10 (West 2012). The Act only prohibits speech that constitutes threats of violence or intimidation. *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 20, 993 N.E.2d 594. When words are a component of the stalking behavior, then the speech does not fall within constitutional protections. See *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 18, 36 N.E.3d 344; *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 17, 30 N.E.3d 557. There are cases in which the dissemination or posting of defamatory, degrading, threatening, or harassing comments to the media or on social media sites would cause a reasonable person to fear for his or her safety and would establish a course of conduct of stalking. See *Piester*, 2015 IL App (3d) 140457, 36 N.E.3d 344; *McNally*, 2015 IL App (1st) 134048, 30 N.E.3d 557. That type of conduct is not alleged in the case at bar.

¶ 27     In this case, the third amended petition alleges that White disseminated Henby's postarrest photo and information regarding Henby's arrest to news organizations and

13

media outlets. According to the allegations in the petition, this information was disseminated to news outlets only after Henby was actually arrested, and the content of the information regarding the arrest and the filing of charges was, apparently, accurate. Information regarding the arrest of or the filing of criminal charges against a local officer or community leader is considered regionally newsworthy and is regularly published. Postarrest photos are routinely included with the story. There is no allegation that the disseminated information included threats of violence, intimidation, or harassment that might cause a reasonable person to fear for his personal safety or to experience significant mental suffering, anxiety, or alarm. There is no allegation that Henby altered his schedule or routine in order to avoid White. After reviewing the third amended complaint in a light most favorable to the petitioner, we conclude that the factual allegations regarding the dissemination of information to the press, as pled, are insufficient to allege stalking behavior within the meaning and the purpose of the Act. In addition, the trial court gave the petitioner three opportunities to cure the defects in his original petition, and the petitioner was unable to allege sufficient facts to establish a course of conduct as required under the Act. Accordingly, we conclude that the third amended petition was properly dismissed with prejudice for failure to state a cause of action under the Stalking No Contact Order Act.

¶ 28 Before leaving this point, we note that White has asked this court to impose sanctions on Henby under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). The purpose of Rule 375(b) is to punish abusive conduct by litigants and their attorneys who appear before us. *Fraser v. Jackson*, 2014 IL App (2d) 130283, ¶ 51, 12 N.E.3d 62.

Sanctions can be imposed if an appeal is deemed frivolous or not filed in good faith. *Fields v. Lake Hillcrest Corp.*, 335 Ill. App. 3d 457, 466, 780 N.E.2d 357, 364-65 (2002). Whether to impose sanctions under Rule 375(b) is a matter left strictly to our discretion. *Fields*, 335 Ill. App. 3d at 466, 780 N.E.2d at 364-65. After considering Henby's arguments in light of the record before us, we do not find that the appeal is wholly frivolous or that Henby filed this appeal as a means to harass White. White's request for Rule 375(b) sanctions is hereby denied.

¶ 29 Given our disposition of the first issue, affirming the dismissal of the third amended petition with prejudice, we have no occasion to consider Henby's remaining contention.

¶ 30 Accordingly, the judgment of the circuit court of Richland County is affirmed.

¶ 31 Affirmed.

2016 IL App (5th) 140407

NO. 5-14-0407

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| KELLY A. HENBY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Richland County. |
| | ) | |
| v. | ) | No. 13-OP-04 |
| | ) | |
| RICHARD WHITE, | ) | Honorable |
| | ) | Christopher L. Weber, |
| Respondent-Appellee. | ) | Judge, presiding. |

**Opinion Filed:** August 1, 2016

**Justices:** Honorable Judy L. Cates, J.

Honorable Richard P. Goldenhersh, J., and
Honorable James R. Moore, J.,
Concur

**Attorney for Appellant** Charles C. Roberts, The Law Offices of Charles C. Roberts, Ltd., 504 West Main Street, Olney, IL 62450

**Attorney for Appellee** Paige Clark Strawn, Quinn Law & Mediation, LLC, 901 North Street, Mt. Vernon, IL 62864