NOTICE
Decision filed 12/28/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190508-U

NOS. 5-19-0508, 5-19-0509 cons.

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| REGINA BRYANT and HARRIS M. BRYANT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioners-Appellees, | ) | Saline County. |
| | ) | |
| v. | ) | Nos. 19-OP-180 & 19-OP-181 |
| | ) | |
| JOSEPH D. HUTCHISON, | ) | Honorable |
| | ) | Cord Z. Wittig, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court properly entered two-year stalking no contact orders in favor of the petitioners and against the respondent because the respondent engaged in a course of conduct directed at the petitioners, and he knew or should have known that this conduct would cause a reasonable person to fear for his or her safety. The circuit court's orders, as written, are overly broad and run afoul of constitutional concerns. Therefore, we vacate that portion of the circuit court's orders prohibiting the respondent from "communicating to or about" the petitioners. The circuit court's orders are affirmed in all other respects.

¶ 2   The petitioners, Regina Bryant (Regina) and Harris Bryant (Harris) (collectively, the Bryants), each filed a petition in the circuit court of Saline County pursuant to the Stalking No Contact Order Act (Act) (740 ILCS 21/1 *et seq.* (West 2018)) against the

1

respondent, Joseph Hutchison. After a hearing, the circuit court granted the Bryants' petitions and entered two-year stalking no contact orders. For the following reasons, we affirm in part, and vacate in part, the circuit court's orders.

¶ 3                              BACKGROUND

¶ 4     The Bryants are married to each other and own Bryant Construction Company. Bryant Construction had entered into a contract with the City of Harrisburg and, in September and October 2019, the company was performing construction work at numerous sites throughout the city. Hutchison had asserted that his wife injured her foot at a construction site near his home that was run by Bryant Construction.

¶ 5     On October 11, 2019, the Bryants each filed a *pro se* verified petition for a stalking no contact order in the circuit court of Saline County against Hutchison pursuant to the Act. The Bryants' petitions contained substantially similar allegations, and each named the other spouse as a protected person. The petitions alleged that between September 12, 2019, and October 7, 2019, Hutchison made three phone calls to Bryant Construction. During the first call, Hutchison called Regina "foul" names and gave her an ultimatum to pay for the medical expenses resulting from his wife's injury or he would prevent the Bryants from working again. The petitions alleged that Hutchison also left two messages on the company voicemail system, one threatening to "clean [the Bryants'] clock" and another stating he was going to "ruin" the Bryants' business. The Bryants alleged that, during this same time period, Hutchison filed a fraudulent claim with the United States Department of Labor, Occupational Safety and Health Administration (OSHA), concerning one of the company's job sites located in the City of Harrisburg, and that Hutchison "harassed" company

2

employees at a job site about "work conditions." The petitions requested an order prohibiting Hutchison from stalking or contacting them, and an order to stay 500 feet away from them, their residence, and the company's job sites throughout the city. Pursuant to the Bryants' petitions, the circuit court entered emergency stalking no contact orders against Hutchison that expired on November 4, 2019. Those orders were later extended until November 18, 2019.

¶ 6 On November 4, 2019, Hutchison filed a motion to dismiss, arguing his actions constituted free speech protected by the first amendment.[1] In support of his motion, Hutchison argued that *People v. Relerford*, 2017 IL 121094, and *Flood v. Wilk*, 2019 IL App (1st) 172792, held that any stalking no contact order prohibiting conduct or communications causing emotional distress violated a respondent's constitutional rights to free speech. Hutchison argued that the plenary orders being sought by the Bryants violated his right to free speech because it prohibited him from committing stalking, the definition of which includes causing emotional distress.

¶ 7 On November 18, 2019, the Bryants responded to Hutchison's motion to dismiss. The Bryants countered that Hutchison was misinterpreting the Illinois Supreme Court's decision in *Relerford*, 2017 IL 121094, in that the court did not strike down the entire criminal stalking statute, but instead only struck the phrase "communicates to or about" from the statute. The Bryants argued that Hutchison's statement that he would "clean your clock" is not protected speech because it constitutes a "true threat" to cause bodily harm,

---

[1]Each of parties retained counsel after the filing of the *pro se* petitions.

leaving the Bryants in fear of their physical safety, as well as inflicting emotional distress. The Bryants argued that Hutchison had engaged in a "course of conduct" under the statute by repeatedly making unwanted phone calls to the Bryants' place of employment.

¶ 8       On November 18, 2019, the circuit court held a hearing on the Bryants' petitions. Prior to the introduction of evidence, the court heard arguments on Hutchison's motion to dismiss. Hutchison represented to the court that, in *Relerford*, 2017 IL 121094, the Illinois Supreme Court struck down as unconstitutional a provision of the criminal stalking no contact statute as facially overbroad because it defined stalking as including acts that caused "emotional distress." Hutchison asserted that *Flood*, 2019 IL App (1st) 172792, extended *Relerford*'s analysis to the civil Act, which contained identical language. Hutchison requested the court dismiss the petitions based on a finding that the Act was unconstitutional as overbroad. The Bryants countered that *Relerford*, 2017 IL 121094, and *Flood*, 2019 IL App (1st) 172792, were inapplicable because the Bryants' petitions were based upon threats to their personal safety. The court denied Hutchison's motion to dismiss, finding the Act was still in full force and effect and that threats were not protected speech. The court noted that it believed that Hutchison's act of filing a report with OSHA concerning alleged safety violations committed by Bryant Construction was protected speech.

¶ 9       At the hearing, Hutchison testified that sometime in early September 2019, his wife broke her foot in a hole at a construction site near his home. Hutchison testified that he contacted officials with the City of Harrisburg, who advised him to contact Bryant

4

Construction, the contractor responsible for the project, to file a claim with the contractor's insurance.

¶ 10 On September 12, 2019, Hutchison called Bryant Construction, and Regina answered the phone. Hutchison identified himself to Regina and indicated that officials at the City of Harrisburg told him to contact the Bryants about his wife's foot injury. Hutchison testified Regina became emotional, cursed at him, and told him she would not file a claim with their insurance company. Hutchison stated that he "fired back" by accusing Bryant Construction of violating OSHA regulations and calling Regina a "psycho bitch." Hutchison testified Regina told him not to call again, and then hung up on him.

¶ 11 Regina testified that when Hutchison called on September 12, 2019, he indicated why he was calling but would not give her any details about his wife's injury. Regina denied refusing to file a claim with Bryant Construction's insurance company. Regina testified she told Hutchison that she would make some calls to "check into it," but that it would take some time. Regina stated that when Hutchison indicated that his wife needed an orthopedic boot, Regina suggested that Hutchison contact his homeowner's insurance to cover the expense while she investigated the allegations. Regina stated that Hutchison then "erupted" and told her that if he did not hear back from Regina, or her insurance carrier, within two hours, he was going to have Bryant Construction's contract with the city cancelled and he would ensure that they never worked in Harrisburg again. Regina testified that Hutchison then called her a "psycho bitch" and said he was going to file a lawsuit against Bryant Construction. Regina told Hutchison that she was "fine" with turning the situation over to their attorneys, and Hutchison replied that he did not believe

5

Regina would be able to hire an attorney because she was a "psycho bitch." Regina told Hutchison that she "would rather be a psycho bitch than *** [an] f'ing idiot." Regina testified she told Hutchison not to call them again and then hung up on him. Regina testified she did not know Hutchison prior to this encounter.

¶ 12    On September 14, 2019, Hutchison called Bryant Construction again, this time using a different cell phone. Regina testified that she answered the call, but that she hung up when she heard Hutchison's voice. Hutchison immediately called back, but Regina did not answer the phone. Hutchison left a voicemail message indicating that he had filed a claim against them with OSHA and stated that he was going to "clean your clock." Regina testified that she perceived Hutchison's statement that he was going to "clean your clock" as a threat, and that it made her fearful. Regina testified the combination of her conversation with Hutchison on September 12, 2019, and his voicemail on September 14, 2019, made her afraid that Hutchison might attempt to do her bodily harm.

¶ 13    On September 23, 2019, Hutchison called Bryant Construction and left another voicemail message. In this message, Hutchison stated that he was going to "make it difficult" for the Bryants, he was going to shut down the Bryants' business, and he was going to report them to OSHA. Regina testified that while the voicemail only threatened the Bryants' business and not their personal safety, the voicemail added to her fear because Hutchison seemed to believe "he has some power to control what we do."

¶ 14    Regina testified that Hutchison called Bryant Construction again on October 4, 2019. Regina testified that she hung up the phone when she heard Hutchison's voice and

6

left the phone off the hook until the following day because she did not want him to call again or leave another message.

¶ 15 Regina testified that she is often home alone while Harris works out of town. Regina testified that based on her interactions with Hutchison, she considers him to be "unhinged and a very agitated person." Regina testified Hutchison was very agitated during their first phone conversation and erupted in anger, and that the first voicemail message he left the Bryants was threatening, aggressive, and intimidating.

¶ 16 Harris Bryant testified that he was fearful of his and Regina's personal safety after the September 12, 2019, phone call because Regina "went off on [Hutchison]" after Hutchison had called Regina a "psycho bitch." Harris testified that Hutchison's voicemail on September 14, 2019, threatening to "clean your clock" also made him fearful because he perceived that as a threat to physically hurt them. Harris testified that he works at various locations all over the city and feels like he is constantly keeping a lookout. Harris testified that he received a letter on September 26, 2019, from OSHA indicating that the complaint filed against Bryant Construction was officially closed.

¶ 17 During Hutchison's testimony, he acknowledged calling the Bryants and leaving them two voicemails, even after Regina told him not to call during their first conversation. Hutchison also admitted saying that he was going to "clean your clock" in one of the messages. Hutchison testified that he contacted OSHA and reported violations against Bryant Construction. Hutchison also stated he visited various job sites of Bryant Construction throughout the city, and that he took a video of one of the sites "under the direction of OSHA."

7

¶ 18    At the hearing, Hutchison continued to maintain that, under *Relerford* and *Flood*, the court could not find that the Bryants were the victims of stalking based on a finding that Hutchison engaged in a course of conduct that caused the Bryants to suffer emotional distress. Hutchison asserted that the court had to strike the phrase "emotional distress" from the definition of stalking in the plenary order form to comport with the dictates of *Relerford* and *Flood*. Hutchison argued the court could only enter a plenary order if Hutchison made at least two threats to the Bryants' physical safety, which the evidence did not demonstrate.

¶ 19    The Bryants contended that Hutchison's threat to "clean your clock," his aberrant behavior, and repeated contacts after being told not to contact the Bryants, constituted a course of conduct that would cause a reasonable person to be fearful of his personal safety and justified the entry of a plenary order. The Bryants acknowledged that Hutchison's report to OSHA did not constitute an act of stalking and indicated that they were not attempting to preemptively restrict his right to free speech.

¶ 20    The court found Hutchison engaged in a course of conduct that would cause a reasonable person to fear for his or her safety. The court observed that Hutchison called Regina a "psycho bitch" during their first conversation, and that Hutchison made four additional calls to the Bryants after Regina told him not to call again. The court found Hutchison threatened to "clean their clocks" in one message and to ruin their business in another. The court found Hutchison's behavior to be unreasonable, and that it was reasonable for the Bryants to fear for their safety, when faced with this behavior. The court indicated that it was going to enter an order prohibiting Hutchison from having any contact the Bryants and ordering him to stay 500 feet away from them. The court stated it would

8

not include a provision physically restricting Hutchison from nearing any Bryant Construction job sites. The court indicated it believed the plenary order would still allow Hutchison to file claims with OSHA regarding the Bryants, to file a lawsuit against the Bryants, or to publicly express his views about the Bryants.

¶ 21 That day, the circuit court entered the two-year, plenary stalking no contact orders, finding that the Bryants were the victims of stalking. The court utilized preprinted, check-the-box forms. The court ordered that Hutchison was prohibited from threatening to commit, or committing stalking, or from contacting the Bryants in any way, directly or indirectly. The court also ordered that Hutchison stay at least 500 feet away from the Bryants, their residence, and their place of employment. The plenary orders prohibited Hutchison from entering or remaining at the Bryants' residence. This appeal follows.

¶ 22                                                ANALYSIS

¶ 23 On appeal, Hutchison argues the plenary orders must be vacated because the Act is overbroad and facially unconstitutional, and the circuit court's finding that Hutchison engaged in two acts of stalking was against the manifest weight of the evidence. Alternatively, Hutchison argues that this court should reverse and remand with instructions to the circuit court to modify the plenary orders to (1) excise the phrase "emotional distress" from the definition of stalking, and (2) either include an exception for Hutchison's home to the provision requiring Hutchison to stay 500 feet away from the Bryants or define the Bryants' place of employment as the Bryants' business office.

¶ 24          Constitutionality of the Civil Stalking No Contact Order Act

¶ 25    In his first point, Hutchison contends the Act is facially overbroad and must be struck down as unconstitutional.[2] Statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute bears the burden of establishing that the statute violates the constitution. *People v. Pittman*, 2018 IL App (1st) 152030, ¶ 24. The courts have a duty to construe the statute in a manner that upholds its validity if reasonably possible. *Pittman*, 2018 IL App (1st) 152030, ¶ 24. The determination of whether a statute is constitutional is a question of law subject to *de novo* review. *Relerford*, 2017 IL 121094, ¶ 30.

¶ 26    The Act enables victims of stalking to seek a civil remedy requiring the offenders not to contact them. For purposes of the Act, "stalking" is defined as "engaging in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, the safety of a workplace, school, or place of worship, or the safety of a third person or suffer emotional distress." 740 ILCS 21/10 (West 2018). A "reasonable person" is defined as "a person in the petitioner's circumstances with the petitioner's knowledge of the respondent

---

[2]In his brief, Hutchison appears to misunderstand the concept of a facial constitutional challenge. For example, in his first point, Hutchison exclusively cites to the language of the plenary orders, as opposed to the statutory language, in analyzing whether the Act is facially unconstitutional as overbroad. See generally *People v. Pittman*, 2018 IL App (1st) 152030, ¶ 24 (in an as-applied challenge the party must show that the statute violates the constitution as it applies to the facts and circumstances of the party, while a facial challenge requires the party to demonstrate that the statute is unconstitutional under any set of facts and the specific facts related to the party are irrelevant). Because Hutchison raises another claim regarding the constitutionality of the plenary order, we will treat Hutchison's first point solely as a challenge to the statute as facially unconstitutional.

and the respondent's prior acts." 740 ILCS 21/10 (West 2018). "Emotional distress" means "significant mental suffering, anxiety or alarm." 740 ILCS 21/10 (West 2018).

¶ 27    As of January 1, 2019, a "course of conduct" is defined as "2 or more acts, including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, or threatens a person, workplace, school, or place of worship, engages in other contact, or interferes with or damages a person's property or pet." 740 ILCS 21/10 (West 2018). "Contact" involves:

> "any contact with the victim, that is initiated or continued without the victim's consent, or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued, including but not limited to being in the physical presence of the victim; appearing within the sight of the victim; approaching or confronting the victim in a public place or on private property; appearing at the workplace or residence of the victim; entering onto or remaining on property owned, leased, or occupied by the victim; placing an object on, or delivering an object to, property owned, leased, or occupied by the victim; and appearing at the prohibited workplace, school, or place of worship." 740 ILCS 21/10 (West 2018).

¶ 28    Prior to January 1, 2019, the Act defined "course of conduct" as "2 or more acts, including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, or threatens, or *communicates to or about*, a person, engages in other contact, or interferes with or damages a person's property or pet." (Emphasis added.) 740 ILCS 21/10 (West 2016). The Illinois Legislature amended the statute to eliminate the phrase "communicates to or about" from the Act effective January 1, 2019. See Pub. Act 100-1000, § 5 (eff. Jan. 1, 2019).

11

¶ 29    This amendment conforms the statute to the Illinois Supreme Court's rationale in *People v. Relerford*, 2017 IL 121094. In *Relerford*, the defendant challenged the constitutionality of the Illinois criminal stalking statute (720 ILCS 5/12-7.3(a), (c) (West 2012)). *Relerford*, 2017 IL 121094, ¶¶ 28-29. At that time, the criminal stalking statute provided that a person commits stalking when he knowingly engages in a course of conduct directed at a specific person, and he knows or should know that this course of conduct would cause a reasonable person either to fear for his safety or to suffer emotional distress. *Relerford*, 2017 IL 121094, ¶ 28 (citing 720 ILCS 5/12-7.3(a)(1), (a)(2) (West 2012)). The criminal statute defined "course of conduct" as " '2 or more acts, including but not limited to acts in which a defendant directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or *communicates to or about*, a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet.' " (Emphasis added.) *Relerford*, 2017 IL 121094, ¶ 28 (quoting 720 ILCS 5/12-7.3(c)(1) (West 2012)). In *Relerford*, the court found the criminal stalking statute (720 ILCS 5/12-7.3(a) (West 2012)) was facially unconstitutional to the extent that it prohibited a person from "communicating to or about" someone, where the speaker knows or should know the communication would cause a reasonable person to suffer emotional distress. *Relerford*, 2017 IL 121094, ¶¶ 63, 65, 78. The court held the provision "communicates to or about" within the definition of "course of conduct" was overbroad and impermissibly infringed upon speech that was protected by the first amendment. *Relerford*, 2017 IL 121094, ¶¶ 63, 78. The court found the provision was

12

severable from the rest of the statute, and struck the phrase "communicates to or about" from the statute. *Relerford*, 2017 IL 121094, ¶¶ 65, 78.

¶ 30   In *Flood v. Wilk*, 2019 IL App (1st) 172792, ¶ 24, the First District reviewed a stalking no contact order which prohibited the respondent from " 'communicating, publishing or communicating in any form any writing naming or regarding [the petitioner], his family, or any employee, staff or member of the [petitioner's] congregation.' " Relying on *Relerford*, the court vacated this portion of the plenary order based on a finding that the provision was an unconstitutional prior restraint on the respondent's right to free speech. *Flood*, 2019 IL App (1st) 172792, ¶¶ 35, 42, 43.

¶ 31   On appeal, Hutchison urges this court to find that the Act impermissibly infringes on free speech by prohibiting statements that cause "emotional distress" and, therefore, is unconstitutionally overbroad. Hutchison argues that such a finding is supported by the Illinois Supreme Court's decision in *Relerford*, 2017 IL 121094. Hutchison represents that the court in *Relerford* "struck down the entire" criminal statute as overbroad because it impermissibly infringed on free speech by prohibiting statements that caused emotional distress. Hutchison further asserts that the court in *Flood*, 2019 IL App (1st) 172792, extended the reasoning of *Relerford* to the civil Act, and held that a stalking no contact order cannot prohibit statements causing emotional distress. Hutchison argues the Act must be struck down as unconstitutional because "the present definition of stalking includ[es] causing 'emotional distress.' " We disagree.

¶ 32   Hutchison's claim is based on a misunderstanding of the holdings in *Relerford* and *Flood*. While the "emotional distress" prong of the stalking statute was part of the court's

13

consideration in *Relerford*, a full reading of the case demonstrates that the court's determination that section 12-7.3(a) of the criminal statute was overbroad, was based upon the inclusion of the phrase "communicates to or about" within the definition of a "course of conduct" in section 12-7.3(c). See *Relerford*, 2017 IL 121094, ¶¶ 63, 78. If the court had believed that the "emotional distress" prong of stalking, found in 720 ILCS 5/12-7.3(a)(2), was overly broad, the court could have struck this language from the statute, but it did not do so. Instead, the court determined that the phrase "communicates to or about" within the definition of "course of conduct" created the constitutional concern, so it struck that language, and only that language, from the statute. *Relerford*, 2017 IL 121094, ¶¶ 28, 63, 65, 78.

¶ 33 Following *Relerford*, the legislature amended the civil Act, effective January 1, 2019, to eliminate the phrase "communicates to or about" someone from the definition of a "course of conduct" under the Act. 740 ILCS 21/10 (West 2018), as amended by Pub. Act 100-1000, § 5 (eff. Jan. 1, 2019). Thus, it cannot be said that the Act, as currently written and which was in effect at the time of the events in this case, conflicts with the rationale of *Relerford* or *Flood*.

¶ 34 Hutchison's claim on appeal that *Relerford* and *Flood* support a finding that the Act is facially unconstitutional is without merit, in that (1) those cases do not hold that a statute prohibiting statements that cause emotional distress impermissibly infringes on free speech, and (2) the Act, as amended and currently in effect, comports with the actual holdings of those cases. For these reasons, we find Hutchison has failed to demonstrate that the Act is facially unconstitutional.

¶ 36   Next, Hutchison argues that the plenary orders must be vacated because the Bryants failed to demonstrate that Hutchison engaged in two acts of stalking. In support of this claim, Hutchison persists in the representation that *Relerford* and *Flood* hold that the "emotional distress" prong of the Act cannot serve as basis for a finding of stalking and the entry of a plenary order. Hutchison contends that because acts causing emotional distress cannot be a basis for a finding of stalking, the Bryants had to demonstrate that Hutchison engaged in a course of conduct that would cause a reasonable person to fear for his safety, and that this could only be accomplished by showing that Hutchison made two threats to the Bryants' personal safety. As we will discuss in more detail below, Hutchison's arguments have no basis in the law.

¶ 37   As already noted, "stalking" is defined under the Act as "engaging in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety *** or suffer emotional distress." 740 ILCS 21/10 (West 2018). First, we reiterate that Hutchison's interpretation of the holdings in *Relerford* and *Flood* is incorrect. Neither case held that emotional distress cannot be a basis for a finding of stalking. Instead, *Relerford* addressed the constitutionality of the phrase "communicates to or about" in the former criminal statute, while *Flood* addressed the constitutional implications of the *Relerford* decision on

15

a specific provision in a plenary order that prevented the respondent from communicating about the petitioner and others.[3]

¶ 38    Hutchison acknowledges in his brief that, if emotional distress was a valid basis for a plenary order, the evidence in this case was sufficient to support the entry of a plenary order.[4] Hutchison's concession of these facts alone is sufficient to affirm the circuit court's entry of the plenary order.

¶ 39    The circuit court, however, entered the plenary order based on a finding that Hutchison engaged in a course of conduct that would cause a reasonable person to fear for his or her safety.[5] On appeal, Hutchison argues that to demonstrate a course of conduct constituting stalking under the Act, the Bryants had to demonstrate that Hutchison made two threats to the Bryants' personal safety. Hutchison misinterprets the statute.

¶ 40    The statute does not require the respondent to verbally threaten a petitioner's physical safety twice before a court can find that the respondent committed stalking. The Act indicates that a person commits stalking when he has engaged in a course of conduct, by committing two or more acts, that would cause a reasonable person to fear for his safety.

---

[3]The Illinois Supreme Court recently upheld a conviction for stalking based on a finding the defendant engaged in a course of conduct that caused the victim to suffer emotional distress. *People v. Ashley*, 2020 IL 123989, ¶¶ 3, 13, 87-90. In *Ashley*, the defendant sent numerous text messages to the victim that included "true threats" or language evidencing "serious expression[s] of an intent to commit an act of unlawful violence" toward the victim. (Internal quotation marks omitted.) *Ashley*, 2020 IL 123989, ¶¶ 33, 99.

[4]In his brief, Hutchison states, "There were, of course, more than two contacts that may have caused emotional distress [in this case]. But after [*Relerford*] and *Flood*, that is no longer the standard. If this Court rules that the trial court found that the statements caused only emotional distress, then this Court must find a basis to distinguish *Relerford* and *Flood*."

[5]Hutchison asserts that the circuit court "did not make any findings in this case" supporting its determination that the Bryants were the victims of stalking. This factual assertion is contradicted by the record. The court clearly set forth the basis for its determination on the record at the plenary hearing.

See 740 ILCS 21/10 (West 2018). These acts include, but are not limited to, acts in which the respondent "by any action, method, device, or means *** threatens a person, *** engages in other contact, or interferes with or damages a person's property or pet." 740 ILCS 21/10 (West 2018) (defining a "course of conduct"). When words alone are a component of the stalking behavior, "[t]he Act only prohibits speech that constitutes threats of violence or intimidation." *Henby v. White*, 2016 IL App (5th) 140407, ¶ 26; see also *Ashley*, 2020 IL 123989, ¶¶ 23, 33, 47 (interpreting the word "threat" within the definition of a "course of conduct" in 720 ILCS 5/12-7.3(c)(1) (West 2014) as prohibiting "true threats" which encompass a "serious expression of an intent to commit an act of unlawful violence" against a person (internal quotation marks omitted)). "Contact," however, includes "any contact with the victim, that is initiated or continued without the victim's consent, or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued ***." 740 ILCS 21/10 (West 2018). Thus, the plain language of the Act contemplates that a "course of conduct" can be more than verbal threats of physical violence, but also unwanted contact. 740 ILCS 21/10 (West 2018).

¶ 41 A petitioner is required to prove stalking by a preponderance of the evidence. 740 ILCS 21/30(a) (West 2018). We will not reverse a trial court's determination that a preponderance of the evidence shows a violation of the Act unless that determination is against the manifest weight of the evidence. *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 12. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is arbitrary, unreasonable, or not based on the evidence. *McNally*, 2015 IL App (1st) 134048, ¶ 12.

¶ 42 In this case, the circuit court found that during their first telephone conversation, Regina told Hutchison not to call the Bryants again. During this conversation, Hutchison called Regina a "psycho bitch" because she did not immediately, and unquestioningly, yield to Hutchison's demands. The court found that Hutchison made four additional telephone calls to the Bryants, despite Regina's explicit directive for him not to do so. In his third call, Hutchison threatened to "clean your clock," which could reasonably be interpreted as a physical threat. After physically threatening the Bryants during this phone call, Hutchison contacted them two additional times, leaving a second message indicating that he was going to ruin the Bryants' business. At the hearing, Hutchison admitted that he called the Bryants at least two additional times after Regina told him not to call the Bryants again.

¶ 43 At the hearing, Regina testified that Hutchison "erupted" in anger during their first conversation, and described Hutchison's overall behavior as threatening, aggressive, intimidating, and "unhinged." Hutchison's threat to physically harm the Bryants, and his repeated, unwanted contacts with the Bryants, constituted a course of conduct that would cause a reasonable person to fear for his or her safety. The circuit court's finding that Hutchison stalked the Bryants by engaging in a course of conduct that would cause a reasonable person to fear for his or her safety is supported by a preponderance of the evidence and is not against the manifest weight of the evidence.

¶ 44                                  Modification of the Order

¶ 45 Hutchison requests that this court reverse and remand with instructions to the circuit court to modify the plenary orders to (1) excise the phrase "emotional distress" from the

18

definition of stalking, and (2) either include an exception for Hutchison's home to the provision requiring Hutchison to stay 500 feet away from the Bryants, or define the Bryants' place of employment as the Bryants' business office.

¶ 46                    Whether the Plenary Orders are Overbroad

¶ 47    Hutchison argues that this court must modify the plenary orders to excise the phrase "emotional distress" from the definition of stalking to protect Hutchison's constitutional right to free speech. Hutchison's point on appeal, again, relies upon a misreading of *Relerford* and *Flood*. For those reasons already discussed, we reject Hutchison's claim that the plenary orders must be modified to delete the phrase "emotional distress." Despite Hutchison's misinterpretation of those cases, however, a review of the plenary orders indicates that the circuit court's orders conflict with the actual holdings of *Relerford* and *Flood*.

¶ 48    In *Relerford*, 2017 IL 121094, the court held that the Illinois criminal stalking statute (720 ILCS 5/12-7.3(a) (West 2012)) was unconstitutional for including "communicates to or about" a person within the definition of a course of conduct that can constitute stalking. *Relerford*, 2017 IL 121094, ¶¶ 63, 65, 78. The court struck the phrase "communicates to or about" from the statute, finding it was overbroad and impermissibly infringed upon speech that was protected by the first amendment. *Relerford*, 2017 IL 121094, ¶¶ 63, 65, 78. Relying on *Relerford*, the court in *Flood*, 2019 IL App (1st) 172792, invalidated a provision of a stalking no contact order which prohibited the respondent from " 'communicating, publishing or communicating in any form' " about the petitioner, as an unconstitutional prior restraint on the respondent's right to free speech. *Flood*, 2019 IL

19

App (1st) 172792, ¶¶ 35, 42, 43. As already noted, the legislature amended the Act to eliminate the phrase "communicates to or about" from the statute, effective January 1, 2019, so the Act currently conforms to the dictates of *Relerford*. See 740 ILCS 21/10 (West 2018), amended by Pub. Act 100-1000, § 5 (eff. Jan. 1, 2019).

¶ 49    Here, the circuit court utilized preprinted, check-the-box forms in fashioning the plenary orders. On the forms, the court checked off the box ordering that the respondent be "prohibited from threatening to commit or committing stalking personally or through a third party." The final page of the orders contains a list of definitions of terms used in the plenary orders. Stalking is defined as "engaging in a course of conduct directed at a specific person, and he or she knows that this course of conduct would cause a reasonable person to fear for his safety *** or suffer emotional distress."

¶ 50    Unfortunately, the court used outdated form orders because the forms still defined a course of conduct as "two or more acts, including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means *communicates to or about*, a person, engages in other contact, or interferes with or damages a person's property or pet."[6] (Emphasis added.) The inclusion of the phrase "communicates to or about" a person is inconsistent with the current version of the Act, and the holdings of *Relerford* and *Flood*. As such, we find the inclusion of the phrase "communicates to or about" within the definition of a "course of conduct" for purposes of stalking, to be an unconstitutional prior restraint on the respondent's free speech.

---

[6]The forms indicate that they were approved by the Conference of Chief Circuit Judges and became effective on December 11, 2009.

¶ 51 In his reply brief, Hutchison finally recognizes that it is the phrase "communicates to or about" which offends the constitution, although he does not accurately pinpoint the required remedy in this case. Hutchison asserts that the plenary orders are "void" because they are "*ultra vires* and [were] entered without authority" in reliance on "the old, unconstitutional, definitions of the now abrogated statute." We summarily reject Hutchison's claim that the plenary orders must be vacated in their entirety as *ultra vires* because (1) he has forfeited the claim by raising it for the first time in his reply brief, and (2) he has failed to provide citations to any authority supporting his claim that the plenary orders are void. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Thus, we order the phrase "communicates to or about" stricken from the plenary orders.[7]

¶ 52 The 500-Foot Restriction From the Bryants' Place of Employment

¶ 53 The plenary orders entered by the circuit court require that Hutchison stay 500 feet away from the Bryants, their residence, and their place of employment. In his final point, Hutchison argues the provision in the orders requiring Hutchison to stay 500 feet away from the Bryants' employment "constitutes a confiscation of Hutchison's right to inhabit his home" because the Bryants may, at some point in the future, elect to do construction work within 500 feet of Hutchison's home. Hutchison argues that this court must remand

---

[7]On appeal, the Bryants incorrectly assert that the plenary orders do not contain a provision prohibiting Hutchison from "communicating to or about" them. The Bryants acknowledge in their brief that if the statute contained such a provision, it would constitute an improper content-based restriction on free speech. We read the Bryants' brief as an implicit recognition that a similar provision within the plenary orders would be an unconstitutional prior restraint on Hutchison's right to free speech. In his reply brief, Hutchison accurately identifies the holdings of *Relerford* and *Flood* for the first time.

21

the cause with instructions for the circuit court to either include an exception for Hutchison's home in this provision or define the Bryants' place of employment as their business office.

¶ 54    The evidence at the hearing was that the Bryants had completed their construction project with the city located near Hutchison's home. Regina testified that Bryant Construction currently had no projects located within 500 feet of Hutchison's property, and that there were no plans for any job sites within that distance of Hutchison's home in the future. In entering the order, the circuit court specifically found that it was denying the Bryants' request to enter an order requiring Hutchison to remain 500 feet away from every Bryant Construction job site. Based on the evidence in the record, Hutchison has failed to demonstrate that the circuit court's orders interfere with his right to inhabit his own home. We find the circuit court's orders requiring Hutchison to remain 500 feet away from the Bryants' place of employment is supported by the manifest weight of the evidence.

¶ 55                                           CONCLUSION

¶ 56    For the foregoing reasons, we vacate that portion of the circuit court's orders defining a "course of conduct" as including when a respondent "communicates to or about" a person. We affirm the circuit court's orders in all other respects.

¶ 57    Affirmed in part and vacated in part.

22